UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 6:24-cv-00351-RRS-DGA |
| CLYDE'S CHICKEN KING, INC. d/b/a CHICKEN KING, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
APPLICATION FOR ATTORNEY FEES AND COSTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS AND PROCEEDINGS TO DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1. Plaintiff's Copyright Enforcement Business. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2. Defendant Chicken King's Website. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    3. Plaintiff's Demand Letters to Chicken King . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    4. Proceedings to Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT

A. The Court Should Award Defendant Its Attorney Fees Under the *Kirtsaeng* Factors. . . . . . . . 9

    1. Unreasonable Litigation Positions and Frivolousness . . . . . . . . . . . . . . . . . . . . . . . 10

    2. Bad Motivation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    3. Considerations of Compensation and Deterrence . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. The Court Should Award Defendant $36,170 in Attorney Fees and Costs.. . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**                                  Page(s)

## CASES

*Adlife Marketing & Communications Co. v. Buckingham Brothers*,
    2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

*Assessment Technologies of WI v. WIREdata, Inc.*,
    361 F.3d 434 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Batiste v. Lewis*,
    976 F.3d 493 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
    27 F.4th 313 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bell v. Oakland Community Pools Project*,
    2020 WL 13695114 (N.D. Cal. Oct. 14, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blum v. Stenson*,
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cajun Services Unlimited v. Benton Energy Services Co.*,
    2020 WL 375596 (E.D. La. Jan. 23, 2020)
    *aff'd*, 855 Fed. Appx. 771 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Chrapliwy v. Uniroyal, Inc.*,
    670 F.2d 760 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Commissioner, I.N.S. v. Jean*,
    496 U.S. 154 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dash v. Mayweather*,
    731 F.3d 303 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dean v. Riser*,
    240 F.3d 505 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fessler v. Porcelana Corona De Mexico*,
    23 F.4th 408 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12, 14, 15

*Gaylord v. United States*,
   777 F.3d 1363 (Fed. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hadix v. Johnson*,
   65 F.3d 532 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hunn v. Dan Wilson Homes*,
   789 F.3d 573 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Innovention Toys v. MGA Ent.*,
   2014 WL 1276346 (E.D. La. Mar. 27, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kirtsaeng v. John Wiley & Sons*,
   579 U.S. 197 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12, 14

*McClain v. Lufkin Industries*,
   649 F.3d 374 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*MGMTL, L.L.C. v. Strategic Technology Institute*,
   2023 WL 9229133 (E.D. La. Dec. 3, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mick Haig Productions E.K. v. Does 1-670*,
   687 F.3d 649 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nightingale Home Healthcare v. Anodyne Therapy*,
   626 F.3d 958 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. Mar. 24, 2015)
   *aff'd*, 847 F.3d 657 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States ex rel. Long v. GSDMIdea City*,
   807 F.3d 125 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Virgin Records Am. v. Thompson*,
   512 F.3d 724 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Woodhaven Homes & Realty v. Hotz*,
   396 F.3d 822 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES AND RULES

Copyright Act of 1976

   17 U.S.C. § 412. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   17 U.S.C. § 505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   17 U.S.C. § 507(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rules of Civil Procedure
   Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   Rule 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## MISCELLANEOUS

DeSouza, *Is CopyCat Legal a Copyright Troll?*
   (Nov. 11, 2023)
   https://www.copycatlegal.com/blog/is-copycat-legal-a-copyright-troll/ . . . . . . . . . . . . 17

**MAY IT PLEASE THE COURT:** Defendant Clyde's Chicken King, Inc. d/b/a Chicken King submits the following Memorandum in Support of its Application for an Award of Attorney Fees and Costs.

## INTRODUCTION

In this case, a company whose main business is extracting large sums in settlement of copyright claims sued a family-owned fast food restaurant located in Port Barre and Opelousas, seeking up to $150,000 in damages.  The complaint alleged that the restaurant had infringed plaintiff's copyright by posting on its website a single photograph of fried chicken.  The photo, however, had been posted in early 2016; the statute of limitations for copyright infringement claims is three years; and plaintiff's own records unambiguously reveal that it first discovered the alleged infringement nearly five years ago.  Moreover, the company sought attorney fees and statutory damages, but because of its delay in registering the copyright, it had no right to that relief.

Defendant moved to dismiss and for summary judgment because the statute of limitations has long passed despite plaintiff's attempted resort to the discovery rule.  Rather than oppose the motion, plaintiff stipulated to dismissal with prejudice, acknowledging that defendant had become the prevailing party and preserving defendant's entitlement to move for an award of attorney fees.  Section 505 of the Copyright Act allows the prevailing party to seek an award of attorney fees, and the Supreme Court has enumerated "several nonexclusive factors" that courts should consider in making awards of attorney's fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . .." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), *see also Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016).  Because all of these

factors point to an award of attorney fees in this case, the Court should grant defendant's motion and award $36,170 in attorney fees and costs.

FACTS AND PROCEEDINGS TO DATE

### 1. Plaintiff's Copyright Enforcement Business.[1]

For the first twenty or more years of its existence, plaintiff Prepared Food Photos, Inc., then known as AdLife Marketing and Communications, maintained a large database of food photographs. SMF ¶ 3. Plaintiff made the photos available for licensing on the stock photo site iStock.com, which is owned by Getty Images. *Id.* In November 2015, a single iStock image could typically be licensed for $12. SMF ¶ 6. Between 2012 and 2016, plaintiff's annual licensing income from iStock ranged from $102,632 to $134,000. Levy SJ Aff. Exh. C, Answer to Interrogatory 21.

In 2016, Plaintiff pulled all of its images from stock websites. SMF ¶¶ 14-15. A search of the Copyright Registry reveals that in 2016 and 2017, plaintiff registered thousands of photographs allegedly taken by its staff in the years from 1994 to 2017, the vast majority taken in the 1990s. SMF ¶ 16. In September 2016, it registered the copyright in an image entitled ChickenFried013, the image at issue in this case. Complaint ¶ 12. No registrations of photographs taken after July 2017 appear on the Copyright Registry. Levy SJ Aff. ¶ 14.

Plaintiff then assigned several employees to search the Internet for websites using its photos. SMF ¶ 19, and began sending out demand letters. For the first few years, the letters came directly

---

[1] This statement of facts is based in large part on the materials submitted in support of defendant's motion for summary judgment, including the Statement of Material Facts (here referenced as "SMF"), and the two affidavits submitted in support of summary judgment by Stacy Boudreaux and undersigned counsel Mr. Levy (referenced as "Boudreaux SJ Aff." and "Levy SJ Aff."). Additional affirmations from these two, attached to this motion, are referenced as "Boudreaux Second Aff." and "Levy Second Aff." For ease of reference, the exhibits attached to this motion are lettered sequentially to the exhibits attached to Levy SJ Aff.

from Joel Albrizio, plaintiff's owner, and later from its Director of Intellectual Property, Rebecca Jones.  The letters typically demanded a settlement of $8,000 or $16,000 to avoid being sued for up to $150,000.  SMF 26, 27, 29.  But in August 2021, plaintiff retained the services of a Florida lawyer, Daniel DeSouza, who set up a law firm, CopyCat Legal, specifically devoted to copyright enforcement.  The demand letter sent in this case is typical of those sent by that firm.  That firm's letters recite several five-figure damages awards that had been made in other copyright lawsuits filed over alleged infringement of a single photograph, including award in cases brought by plaintiff, warn that suit would be filed in Florida if necessary, warn of awards of statutory damages and attorney fees, tell recipients that it would be expensive for them to hire lawyers, and include some version of following blocked text in bold and often italicized font:

> **You shall pay Thirty Thousand Dollars ($30,000.00) within twenty-one (21) days of the date first written above and shall immediately cease and desist from any further use of our client's work(s).**

Plaintiff also follows through on its threats of litigation.  Levy SJ Aff. ¶ 5.  Based on the 2016 and 2017 registrations, over the past several years, plaintiff has filed more than 270 copyright infringement lawsuits.  SMF ¶ 20.  Almost all of these cases have been filed against small businesses like the defendant here, claiming infringement of a single photo or a small number of photos.  Levy SJ Aff. ¶ 15.  The cases are filed **only** against businesses run as artificial entities—that is, defendants that cannot defend themselves pro se.  Levy SJ Aff. ¶ 16.  Almost every one of these actions appears to end either in a default judgment or a confidential settlement.  SMF ¶ 21.  The vast majority appear to resolve within a few months of filing, in circumstances that appear to reflect that there has been a "voluntary settlement."  Levy SJ Aff. ¶ 16.  Most of the rest of the cases end in a default judgment, in which plaintiff submits an uncontested affidavit from Jones as well as an affidavit from Mr.

DeSouza attesting to his attorney fees at the hourly rate of $450.  Levy Second Aff. ¶ 10.

This enforcement model appears to have been exceptionally effective.  In a deposition in a different case, plaintiff's Rule 30(b)(6) representative acknowledged the great bulk of the work done by plaintiff's staff is devoted to copyright enforcement, Levy Second Aff., Exh. K, Fleurant Dep., at 8-9, and that the income from this enforcement is a large part of its overall revenue.  *Id.* at 11.  A spreadsheet maintained by plaintiff shows that plaintiff received more than $300,000 in the seven months from late April 2019 to December 2019, Levy Second Aff. ¶ 3; Solt Aff., the same year that plaintiff sent its first demands to defendant.  That amount is more than two times as much as its highest annual licensing income in the years before it reconstituted itself as a copyright-enforcement business, Levy SJ Aff., Exh. C, Answer to Interrogatory 21, and one-and-a-half times its subscription income from the entire year of 2019.  Levy SJ Aff. Exh. A, Answer to Interrogatory 13.  In addition, plaintiff has admitted elsewhere that Mr. DeSouza's firm sent 1800 demand letters between the time that firm took over the representation in August 2021 and November 2023.  SMF ¶ 23.  The default judgments alone during a sixteen-month period from 2022 to 2023 total $500,000, roughly three times the subscription income reported for those two years.  SMF ¶ 22.  In sum, it is apparent that infringement claims, not subscriptions by companies seeking access to plaintiff's photographs, account for the great bulk of plaintiff's business.

2. **Defendant Chicken King's Website.**

Defendant Chicken King operates two fast food restaurants, one in Port Barre and one in Opelousas.  Complaint ¶ 14.  In late 2015, Chicken King hired AT&T to create a website, and supplied it with photographs of its products, taken with its own camera.  SMF ¶ 7.  But AT&T (or, more precisely, its subcontractors) acquired other photographs; one of them was ChickenFried013,

the subject of this action.  Affirmation of Ben Gardner ¶¶ 5-8 ("Gardner Aff.").  Defendant relied on AT&T to comply with copyright law in acquiring images.  Boudreaux SJ Aff ¶ 14.  Although paragraph 18 of the complaint alleges that this use was unlicensed, the image was available for licensing from a stock site at that time, and given the nature of plaintiff's contract with the stock photo site, plaintiff was not told who was licensing its photos.  Levy SJ Aff. ¶ 6.  The AT&T contractor that did the work has indicated that its records reflect that it subcontracted the design work, and the acquisition of images, to a third company; that this third company supplied five images, including the fried chicken image at issue in this case, which it reported having licensed; and that the subcontractor provided the iStock image numbers for those photos.  Gardner Aff.  ¶¶ 3-8. However, the subcontractor is no longer being used, *id.*, and declined to answer questions.  Levy Second Aff. ¶ 25.

The website went online in early 2016, at http://www.chickenkingla.com. SMF ¶ 18.  As of March 2016, the first time that the Chicken King website appears in the "Wayback Machine" in the Internet Archive, Boudreaux SJ Aff. ¶ 6, ChickenFried013 appeared on two separate pages: the home page, http://www.chickenkingla.com, and the "products" page, http://www.chickenkingla.com /Products.  SMF ¶ 18. The March 2016 iterations can be viewed on the Internet Archive at https://web.archive.org/web/20160309104430/http://chickenkingla.com/ and https://web.archive.org/ web/20160309104430/http://chicken kingla.com/Products.  Boudreaux SJ Aff. ¶ 6.

### 3.  Plaintiff's Demand Letters to Chicken King.

For several years, plaintiff has maintained a log on which it records each time its staff finds a "hit" during their reverse image searches.  Levy SJ Aff. ¶¶ 11, 12.  On June 10, 2019, the log reflects two hits identifying ChickenFried013 as having been seen on both web pages.  SMF ¶ 25.

Plaintiff, then operating under its original AdLife name, sent defendant a demand letter signed by Joel Albrizio, its president and owner, accusing defendant of copyright infringement and demanding a payment of $16,000.  SMF ¶ 26.  The letter was undated but included attachments dated June 10, 2019, that included ChickenFried013 and the URLs of the pages where the image had been found. If that amount were not paid, plaintiff warned, it would sue Chicken King for up to $150,000 in damages as well as costs and attorney fees.  SMF ¶ 26.  On receipt of the letter, defendant promptly removed the photo from the home page of its website, but later concluded, after talking to a local lawyer, that the demand looked like a scam.  Boudreaux SJ Aff. ¶ 8; Boudreaux Second Aff. ¶ 3.

Sometime later, likely in early 2020, plaintiff sent defendant a second letter, demanding a payment of $8000 and again threatening to sue for $150,000 in damages as well as costs and attorney fees.  SMF ¶ 26.  The reverse image search log suggests that a third demand letter was sent later in 2020.  Levy Aff. Exh. D, page 1.

On March 8, 2021, the reverse image search log reflects that plaintiff's staff again spotted ChickenFried013 on the only page of the Chicken King website where it remained posted, http://www.chicken kingla.com/Products.  SMF ¶ 28.  Plaintiff, now using its current name, Prepared Food Photos, sent a fourth demand letter to defendant, this time signed by Rebecca Jones, its Director of Intellectual Property.  The letter demanded a payment of $8,000, again warning that if defendant did not make such a settlement payment, plaintiff would file suit seeking up to $150,000 in damages as well as costs and attorney fees.  SMF ¶ 29.  Still thinking that the letters looked like a scam, defendant took no further action in response to the demand letter.

On August 11, 2022, the reverse image search log reflects that plaintiff's staff again spotted ChickenFried013 on the only page of the Chicken King website where it remained posted,

http://www.chicken kingla.com/Products.  Levy SJ Aff. ¶ 12.  The search log does not indicate that plaintiff's staff sent a demand letter, but shows that the issue was referred to "CC" and that an initial demand letter was sent on November 21, 2022.  Presumably this notation refers to the letter dated November 10, 2022, from plaintiff's law firm, CopyCat Legal, demanding payment of $30,000 within twenty-one days or plaintiff would sue for up to $150,000 plus costs and attorney fees.  Levy Second Aff. ¶ 12 and Exh. N.  Still believing the demands to be a scam, defendant again did not respond. Boudreaux SJ Aff. ¶¶  12-13.

The demand letter was replete with both false statements and misleading statements, calculated to enhance the letter's in terrorem impact on a lay recipient.  For example,

**On page 2:**

— The letter said "To our knowledge, our client ***did not*** authorize you or your company to use" the photo.  The implication is that, if there had been authorization, plaintiff would have known about it.  In fact, because plaintiff's arrangement with iStock concealed the identities of licensees from plaintiff, Levy SJ Aff. ¶ 6 and Exh. A, plaintiff had no way of knowing whether or not the use was licensed.  Indeed, there is every reason to believe that Chicken King did have a license.  Gardner Aff. ¶¶ 6-8.  Thus, the implication that Chicken King must not have had a license is false.

— On pages 2 and 3, the letter said that if plaintiff sued, it could seek and award of attorney fees as well as statutory damages up to $30,000 (and, continuing to page 3, up to $150,000).  But the factual predicate for that threat was false.  Because Chicken King's use began before registration of the copyright, 17 U.S.C. § 412 barred plaintiff from seeking either attorney fees or statutory damages.

**On page 3:**

— In addition, the letter cites three decisions from the Eleventh Circuit awarding very large amounts of statutory damages. The letter fails to explain, however, that each of these cases was decided as a default judgment, based on a one-sided presentation from the plaintiffs in those cases, and that none of these cases involved the use of stock photographs.

— The letter drops a footnote from the foregoing paragraph asserting that because plaintiff is a Florida company, is located in Florida, and viewed the alleged infringement there, it planned to sue in Florida if forced to sue to get its money. In fact, the consistent pattern of plaintiff's 270 infringement lawsuits is that it sues where the defendant is located. Levy Second Aff. ¶ 2. The stated intention to sue in Florida was false, and even a small business person who knows a local lawyer is not likely to know a Florida lawyer, or understand how easy it can be to find local counsel.

— The letter also recites, in language continuing onto page 4, two damages awards "commensurate" with the above examples, without acknowledging that both were default judgments.

**On page 4:**

— Further on, the letter characterizes plaintiff's subscription program as requiring payment of a minimum of $999 per month, with a minimum subscription period of one year, resulting in a statutory damages award of $35,964 for one year of infringement plus $2997 for each additional month of infringement. This discussion is not just misleading because of the unavailability of statutory damages, but also because the uniform rule in the federal courts is that in calculating actual damages "The question is not what the owner would have charged, but rather what is the fair market value . . . [of] the thing taken." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001). *See also* pages 12-13, *infra* (citing appellate cases from other circuits). Plaintiff's letter does not acknowledge that no court has ever accepted its damages theory in a contested case—that is, it has

-8-

obtained damages awards on that theory **only** in default judgments.

The letter also mischaracterizes plaintiff's subscription agreements, in that several of the agreements during the period for which plaintiff claims damages have been for amounts lower than $999 per month.  Levy Second Aff. ¶ 4 and Exh. J.  And each of the agreements contains a liquidated damages clause specifying that the damages for misuse of a single photograph is a flat amount of $8000.  *Id.*  Moreover, there is reason to believe that some of the subscription agreements are a charade: they were entered not because the subscribers wanted to gain access to plaintiff's library of food photos, but because the subscribers had been identified through reverse image searches as alleged infringers, and had received threats of litigation.  The subscription agreements were then offered as an alternative to paying damages.  *Id.* ¶ 5.

In sum, plaintiff's demand letters were aimed to intimidate the legally unsophisticated owners of an small business into paying large amounts to settle weak infringement claims.

### 4. Proceedings to Date.

On March 8, 2024, three years to the day after the search that plaintiff conducted on March 8, 2021, plaintiff filed this action, alleging copyright infringement.  Going further than the demand letter, the complaint affirmatively alleges that "Defendant is not and has never been licensed to use or display" the photo. Complaint ¶ 18.  Like the demand letter, the Complaint falsely alleges that the image was published at some time after the date the copyright was registered, *id.* at ¶ 16, and that, accordingly, plaintiff is entitled to seek statutory damages up to $150,000 and attorney fees.  *Id.*  at ¶¶ 33, 34.  The Complaint also misleadingly alleges, "Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff discovered the Defendant's unauthorized use/display of the Work on August 11, 2022."

On April 12, 2024, having found counsel to defend it pro bono, defendant moved to dismiss on the face of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment under Rule 56, on the ground that suit had been filed after the three-year statute of limitation expired.  On May 1, 2024, plaintiff and defendant stipulated to the dismissal of this action with prejudice, reserving the issue of attorney fees and costs, and specifically acknowledging that defendant is the prevailing party.  Pursuant to the stipulation, on May 2, 2024, the Court issued an order dismissing the case with prejudice.

## ARGUMENT

**A.  The Court Should Award Defendant Its Attorney Fees Under the *Kirtsaeng* Factors.**

The Copyright Act of 1976 provides, in 17 U.S.C. § 505, that "the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."  Chicken King became the prevailing party once the case was dismissed with prejudice.  *United States ex rel. Long v. GSDMIdea City*, 807 F.3d 125, 128–29 (5th Cir. 2015); *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001).

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), and *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016), the Supreme Court laid out the "several nonexclusive factors" that courts should consider in making awards of attorney's fees.  *See Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020).  The factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act."  *Fogerty*, 510 U.S. at 534 n.19 (cleaned up).  In *Kirtsaeng*, the Court said that courts should "give substantial weight to the reasonableness of [the losing party's] litigating position,

but also take into account all other relevant factors." 579 U.S. at 208–10.  The Fifth Circuit has put particular emphasis on the objective reasonableness of the losing party's position and considerations of compensation and deterrence, noting the need for fees when a copyright owner has repeatedly made "overaggressive assertions of copyright claims." *Batiste*, 976 F.3d at 507–08.  "An award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Hunn v. Dan Wilson Homes*, 789 F.3d 573, 588–589 (5th Cir. 2015) (cleaned up), *quoting Virgin Records Am. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008).

Here, plaintiff filed a non-meritorious lawsuit and dismissed only after defendant secured counsel to file a substantive motion.  As discussed below, each of the factors enumerated in *Fogerty* and *Kirtsaeng* supports an award of attorney fees in favor of defendant.

**Unreasonable Litigation Positions and Frivolousness.**

Plaintiff's litigation positions were objectively unreasonable, indeed frivolous, in at least four separate respects.  First, the statute of limitations in copyright cases is three years.  17 U.S.C. § 507(b). Although plaintiff typically invokes the discovery rule to evade the statute of limitations, claiming to have discovered the alleged infringement within a short time before the action is filed, in this case plaintiff's own records reveal that it located Chicken King's website and both pages where the copyrighted image could be seen in two separate reverse image searches in June, 2019— nearly five years before it filed this suit.  The complaint's allegation of discovery in 2022 was false.[2]

Moreover, because the alleged infringement began no later than March 2016, five months before the copyright in the image in question was registered, there was no basis for seeking an award

---

[2] Defendant accepts the representation from plaintiff's counsel Mr. DeSouza that he personally was not aware of the earlier discovery.

of attorney fees or statutory damages.  17 U.S.C. § 412.  Given that plaintiff's counsel refer to the Wayback Machine to justify seeking increased amounts of damages, Levy SJ Aff. ¶ 3, plaintiff knew or should have known that these forms of relief were unavailable.

Additionally, the complaint alleged that Chicken King was never licensed to use the photo. Plaintiff had no way of knowing whether Chicken King was using the image pursuant to a proper license, because the contractual arrangement it had with Getty Image's iStock subsidiary made it impossible for plaintiff ever to know whether a given image had been licensed for use on a particular company's website.  Indeed, so far as counsel have been able to ascertain, the companies involved in creating Chicken King's website thought that they had obtained a proper license for use of the photo.  Gardner Aff.  ¶¶ 6-8.

Finally as to the unreasonableness factor noted by *Kirtsaeng* and *Fogerty*, the actual damages theory on which the copyright claim in this case was based was objectively unreasonable.  That unreasonableness is shown not only by the uniform caselaw holding that it is fair market value for the work taken, not a copyright plaintiff's asking price, that sets the actual damages.  *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) ("The question is not what the owner would have charged, but rather what is the fair market value . . . [of] the thing taken"); *Gaylord v. United States*, 777 F.3d 1363, 1368 (Fed. Cir. 2015); *Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013); *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007)).   In addition, in a deposition in *Prepared Food Photos v. WeNeedaVacation.com*, No. 1:23-cv-11085-RGS (D. Mass.), plaintiff's intellectual property director (the same person who signed the 2021 demand letters to Chicken King) admitted under oath that $12,000 was not the reasonable market value of a license for a single photograph of food.  Levy Second Aff., Exh. K, Jones Dep. at 58.  Indeed, the court in *Adlife Mktg. & Commun.*

-12-

*Co. v. Buckingham Brothers,* 2020 WL 4795287 (N.D.N.Y. Aug. 18, 2020), rejected plaintiff's

argument that "mere reproduction of a stock photo of pork" warranted a five-figure damages award,

and held that plaintiff's counsel had proceeded in bad faith in making such an argument. *Id.* at *7.

*See also  Bell v. Oakland Community Pools Project*, 2020 WL 13695114, at *3-*4 (N.D. Cal. Oct.

14, 2020) (awarding fees in part because plaintiff sought a disproportionate amount of damages).


Moreover, not all of plaintiff's subscription agreements set a price of $999 per month; for

example, one had a monthly price as low as $99 per month and several contracts provided for other

monthly rates less that $999.    See Levy Second Aff.  ¶ 4 and Exh. J. And each of the contracts

contains a liquidated damages clause setting the price of a single use beyond the terms of the license

at $8000. *Id.*  In summary, then the actual damages theory on which this lawsuit is predicated is

objectively  unreasonable  both  as  a  matter  of  law  and  because  it  is  based  on  factual

misrepresentations.

In *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022), the Court

of Appeals upheld an award of attorney fees awarded in that case because

> Bell is not the typical copyright plaintiff seeking "a fair return for [his] creative
> labor." . . . [T]he district court reasonably concluded that Bell is a serial litigant, who
> makes exorbitant demands for damages in hopes of extracting disproportionate
> settlements. This case is another in the line. The school shared a single page of Bell's
> work with fewer than 1,000 online followers and immediately removed the posts
> upon request. Bell was unable to identify any actual financial injury associated with
> that use but brought suit anyway. Attorney's fees were thus an appropriate deterrent,
> both with respect to Bell and other copyright holders who might consider a similar
> business model of litigation.

*Id.* at 326.  Despite the decision in *Buckingham Brothers*, where sanctions were imposed in part

because its counsel sought exorbitant damages, plaintiff has gone on to extract exorbitant damages

-13-

from many small businesses across the land.  It has exacted these damages not only through its more than 270 lawsuits, but also by sending out the 1800 demand letters similar to the letter sent to Chicken King, using false and misleading statements calculated to instill fear in small business owners who likely will not have ready access to a lawyer who is familiar with copyright law and with the flawed aspects of plaintiff's enforcement model, and or to the lawyers with such expertise who would cost less than the likely settlement amount on which plaintiff would insist.  An award of attorney fees is appropriate for deterrent purposes in this case as well.

**Bad Motivation.**

In *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017), the trial court held that fees should be awarded against the plaintiff, finding an improper motive because "[a]ll of the evidence before the Court demonstrates that Perfect 10 is in the business of litigation, not protecting its copyrights or 'stimulat[ing] artistic creativity for the general public good.'" *Id.* at *7, *citing Fogerty*, 510 U.S. at 527.  So, too, in this case.  Although plaintiff does have a substantial database of food images, it is not currently in the business of creating photographs; its last copyright registration was in 2017.  Levy SJ Aff. ¶ 14.  And its main business is bringing copyright claims based on exaggerated damages theories, taking advantage of the lack of sophistication of the small businesses that it targets and their lack of ready access to knowledgeable and affordable copyright counsel.  As in *Perfect 10,* the Court should find that the motivation factor supports an award of attorney fees.

**Considerations of Compensation and Deterrence**.

In *Kirtsaeng*, the Supreme Court specifically called out "overaggressive assertions of copyright claims" as warranting attorney fee awards for reasons of deterrence, 579 U.S. at 209, and

the Fifth Circuit has approved a district judge's exercise of discretion to award attorney fees against a plaintiff that filed five separate copyright lawsuit making weak claims.  *Batiste v. Lewis*, 976 F.3d 493, 507-508 (5th Cir. 2020).  This plaintiff has far outstripped the plaintiff in *Baptiste*, having by now filed more than 270 infringement lawsuits, almost all of them based on the same unreasonable damages theory.  An award of attorney fees will deter further such litigation.  Moreover, when plaintiff obtains default judgments against litigation targets that could not afford to defend themselves, it consistently seeks and obtains award of attorney fees.  *See*, *e.g.*, Levy Second Aff. ¶ 10.  *Fogerty* teaches that, under the Copyright Act,  "[p]revailing plaintiffs and prevailing defendants are to be treated alike."  510 U.S. at 534.

In addition, the Seventh Circuit has recognized the special need for awards of attorney fees to encourage defendants in intellectual property cases to stand up for their rights.  *Nightingale Home Healthcare v. Anodyne Therapy*, 626 F.3d 958, 963 (7th Cir. 2010); *Woodhaven Homes & Realty v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005).  The plaintiff, after all, has built-in statutory incentives to pursue claims that might lead to an award of actual and statutory damages, but a defendant has no way of recovering damages from which attorney fees can be paid.  The Seventh Circuit expressed particular concern in *Nightingale* about abuse of intellectual property claims to disadvantage a small company.  And in *Woodhaven*, it reasoned, "[W]ithout the prospect of such [a fee] award, [a defendant] might be forced into a nuisance settlement or deterred all together from exercising his rights."  396 F.3d at 824, quoting *Assessment Technologies of WI v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004).

**B.     The Court Should Award $36,170 in Attorney Fees and Costs.**

The Fifth Circuit, like most circuits, determines attorney fee awards according to the lodestar

method, whereby the Court multiplies the number of hours reasonably spent on the litigation by the reasonable hourly rate. *Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408, 415 (5th Cir. 2022). For lawyers in private practice, like Heather Cross, the presumptively proper hourly rate is the attorney's normal billing rate. For lawyers in public service or public interest practice, like Mr. Levy, the rate is determined by reference to market rates for lawyers of similar qualifications. *Blum v. Stenson*, 465 U.S. 886, 895-896 (1984).

In that regard, it is the prevailing hourly rate in the district where the district court sits that governs the presumptively reasonable rate for attorneys. However, a higher rate is justified when the litigation required the involvement of out-of-town specialists. The Fifth Circuit has endorsed the approach of many other circuits that out-of-district counsel may be entitled to the rates appropriately charged in their home districts under certain limited circumstances. *McClain v. Lufkin Industries*, Inc., 649 F.3d 374, 381–82 (5th Cir. 2011), so long as "hiring the out-of-town specialist was reasonable in the first instance, and (2) . . .  the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Id.*, quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995), and citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir.1982). *See also Innovention Toys v. MGA Ent.,* 2014 WL 1276346, at *2 (E.D. La. Mar. 27, 2014), *vacated and remanded on other grounds*, 611 Fed. App'x 693 (Fed. Cir. 2015) (unpublished), *cert. granted, judgment vacated on other grounds*, 579 U.S. 915 (2016).

Here, defendant was unable to locate an attorney in the Western District of Louisiana who was willing to take the lead in representing it, Boudreaux Second Aff. ¶¶ 6; Ms. Cross was able to participate as local counsel in the case only because Mr. Levy was serving as lead counsel. Cross Aff. ¶ 11; Levy Second Aff. ¶ 24. Mr. Levy has extensive experience defending the targets of

excessive copyright enforcement schemes, including the scheme perpetrated by this particular plaintiff, and was able to work much more efficiently because he knew many facts about plaintiff and had crafted relevant legal arguments in other cases.  Levy SJ Aff. ¶ 4; Levy Second Aff. ¶ 21.

An award of out-of-district specialist rates is also appropriate because plaintiff is represented by Daniel DeSouza, who sent the demand letter and has acted as plaintiff's lead counsel in responding to the attorney fees issue.  Levy Second Aff. ¶ 8.  Mr. DeSouza's affidavits in support of plaintiff's attorney fees applications elsewhere reveal that he is the principal of the South Florida firm of CopyCat Legal, which specializes in copyright infringement litigation.  *Id.* Exh. M.  *See* DeSouza, *Is CopyCat Legal a Copyright Troll?* (Nov. 11, 2023), https://www.copycatlegal.com/ blog/is-copycat-legal-a-copyright-troll/.  When plaintiff seeks an award of attorney fees in connection with its default judgments, it consistently seeks to have fees for Mr. DeSouza's time awarded at the rate  of $450 per hour, regardless of the district in which the litigation is being conducted.   Levy Second Aff. ¶ 10.

Although the out-of-town specialist principles adopted by the Fifth Circuit could justify defendant seeking an award of attorney fees at the District of Columbia market rates described in Mr. Levy's affirmation, defendant is seeking fees at an hourly rate supported by fee determinations in intellectual property cases litigated in the Eastern District of Louisiana.  In that regard, fees were awarded at an hourly rate of $480 for time spent in copyright infringement litigation by lead counsel for plaintiff, a lawyer with 28 years of experience, in *MGMTL, L.L.C. v. Strategic Technology Institute*, 2023 WL 9229133 (E.D. La. Dec. 3, 2023), and $450 per hour rates were awarded for time spent by a patent litigator with thirty years of experience in *Cajun Services Unlimited v. Benton Energy Serv. Co.*, 2020 WL 375596, at *5 (E.D. La. Jan. 23, 2020), *aff'd*, 855 Fed. Appx. 771 (Fed.

-17-

Cir. 2021)(unpublished).  Because Mr. Levy is a litigator with more than 45 years of experience, as recounted in his affirmation in support of an award of attorney fees, and because fees were awarded at the hourly rate of $550 for his time as guardian ad litem for hundreds of defendants sued for copyright infringement, in *Mick Haig Productions E.K. v. Does 1-670*, 687 F.3d 649, 650 (5th Cir. 2012), the $500 per hour sought for his time is reasonable.  Ms. Cross's normal billing rate of $350 per hour for a lawyer with twenty-five years of experience is likewise reasonable.

The contemporaneous time records maintained by counsel reflect that they spent the following amounts of time on this litigation (including time spent litigating the issue of attorney fees) through May 14, 2022:[3] Levy. 63.8 hours; Cross: 11.9 hours.  Excluded from the fee application are the hours spent by other attorneys at Public Citizen Litigation Group that consulted on the filings. The lodestar this totals $36,170:

| Attorney | Hourly Rate | Time Spent | Total |
|----------|-------------|------------|-------|
| Levy | $500 | 63.8 | $31,900 |
| Cross | $350 | 11.9 | 4,165 |
| TOTAL | | | $36,065 |

In addition, defendant incurred the $105 fee required for Mr. Levy's pro hac vice application.

## CONCLUSION

The Court should award $36,320 in attorney fees and costs.

Respectfully submitted,

---

[3] Fees should be awarded for time spent seeking an award of attorney fees.  *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990); *Innovention Toys*, 2017 WL 3206688, at *3.  Further time spent on the fee application will be reflected in defendant's reply brief.

_____/s Paul Alan Levy_____
Paul Alan Levy (pro hac vice)

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org


_____/s/  Heather Cross_____
Heather Cross

The Cross Law Firm
6663 Jefferson Hwy
Baton Rouge, Louisiana 70806
(225) 256-0366
hcross@lawacrossla.com

May 15, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this date I am filing Defendant's Motion for an Award of Attorney Fees and Costs, Memorandum of Law, Affirmation of Stacy Deville Boudreaux and accompanying exhibits, Affirmation of Paul Alan Levy and accompanying exhibits,  Affirmation of Heather Cross and accompanying exhibit, Affirmation of Ben Gardner, and proposed order by ECF, which will cause those documents to be served on counsel for plaintiff John Baay.  The filings will also be emailed to Daniel DeSouza.  There are no parties not on ECF.

_____/s Paul Alan Levy_____
Paul Alan Levy (pro hac vice)

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

May 15, 2024

-20-