IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

Case No. 6:24-cv-00351-RRS-DJA

PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC.,

     Plaintiff,

v.

CLYDE'S CHICKEN KING, INC. d/b/a CHICKEN KING,

     Defendant.

_____

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S APPLICATION FOR ATTORNEY FEES AND COSTS

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc.

("Plaintiff") hereby files this memorandum in opposition to defendant Clyde's Chicken King,

Inc.'s ("Defendant") Application for Attorney Fees and Costs (the "Motion") [D.E. 15].

Dated: June 5, 2024

GIEGER, LABORDE & LAPEROUSE,
LLC
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Tel: 504.561.0400
jbaay@glllaw.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………...……………………...…i

TABLE OF AUTHORITIES………………………………………………..…………ii

INTRODUCTION………………………...………………………….………...…………1

BACKGROUND…………………………………………...…………………………….1

ARGUMENT……………………………………………………...….……………5

I.      Legal Standard……………………………………………………....…….5

II.     The <u>Fogerty</u> Factors Do Not Support an Award of Fees ………………………5

    A.  *Frivolousness or Objective Unreasonableness*……………………..…………5

    B.  *Motivation*……………………………………………………10

    C.  *Compensation and Deterrence*……………………………….…….…..15

III.    Unreasonableness of Defendant's Fees and Costs……………….…………..15

IV.     The Costs Sought by the Motion are Not Taxable.……………………...……….18

CONCLUSION……………………………………………………………….19

CERTIFICATE OF SERVICE.……………………….……………………19

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

**<u>TABLE OF AUTHORITIES</u>**

<u>**CASES**</u>

<u>Affordable Aerial Photography, Inc. v. WC Realty Grp., Inc.</u>, No. 22-81256-CV-
MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 63034 (S.D. Fla. Apr. 6, 2023…………..………..13

<u>Bridgeport Music, Inc. v. Rhyme Syndicate Music</u>, 376 F.3d 615 (6th Cir. 2004)…………...…14

<u>Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev. Inc.</u>,
No. 6:18-CV-01606, 2020 U.S. Dist. LEXIS 241335 (W.D. La. Dec. 22, 2020)………..…….17

<u>Creations Unlimited, Inc. v. McCain</u>, 889 F. Supp. 952 (S.D. Miss. 1995)………………….…6

<u>Creations Unlimited, Inc. v. McCain</u>, 112 F.3d 814 (5th Cir. 1997)……………………….…..6

<u>Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.</u>, 2017 U.S. Dist. LEXIS
124082 (S.D.N.Y. Aug. 4, 2017)……………………………………………….………..15

<u>Derek Andrew, Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696 (9th Cir. 2008)………………………9

<u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994)……………………………………….…..5, 14

<u>Graper v. Mid-Continent Cas. Co.</u>, 756 F.3d 388 (5th Cir. 2014)…………………...………8

<u>Guzman v. Hacienda Records</u>, No. 6:12-CV-42, 2015 U.S. Dist. LEXIS
108360 (S.D. Tex. Aug. 18, 2015)……………………………………………..……….18

<u>Jordan v. Sony BMG Music Entm't Inc.</u>, 354 Fed. Appx. 942 (5th Cir. 2009)…………...…..9

<u>Lee v. Pearl River Basin Land & Development Company, L.L.C.</u>, 2014 U.S. Dist.
LEXIS 17072 (E.D. La. 2014)……………………………………………...……………18

<u>Malibu Media, LLC v. Doe</u>, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929
(N.D. Ill. June 9, 2014)…………………………………………………………………..10

<u>Martins v. 3PD</u>, Case No. 11-11313-DPW, 2013 U.S. Dist.
LEXIS 45753 (D. Mass. Mar. 28, 2013)……………………………………….…………8

<u>Matthew Bender & Co. v. West Publ'g Co.</u>, 240 F.3d 116 (2d Cir. 2001)……………..……6, 14

<u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545 (2014)………………...…5

<u>Olive v. Tubbs</u>, No. 3:22-CV-05205, 2023 U.S. Dist. LEXIS 175984
(W.D. La. Sep. 29, 2023)…………………………………………………...…………….17

<u>Petrella v. MGM</u>, 572 U.S. 663 (2014)……………………………………………………9

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

Pond Guy, Inc. v. Aquascape Design, Inc., Case No. 13-13229, 2014 U.S.
Dist. LEXIS 85504 (E.D. Mich. June 24, 2014)……………………………….……………….8

Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357 (5th Cir. 2004)…………..6

Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832,
2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022)……………………….……………..9

Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No.
1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023)………..…10

Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER),
2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023)…………………………..………………10

Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL,
2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022)…………………………...……………10

Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-
ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022)……………..10

Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484
(JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023)…………..……………10

Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc., No. 1:23-CV-926-JRR,
2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024)…………………………………………10

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV,
2022 U.S. Dist. LEXIS 205649 (S.D. Fla. Mar. 22, 2022)…………………………………..……9

Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR,
2022 U.S. Dist. LEXIS 227304 (S.D. Fla. Dec. 19, 2022)………………………………………10

Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704
(LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023)………………..…….10

Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No.
1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023)…………..10

Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB),
2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023)…………………………………...……10

Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010)……...6

Rimini Street, Inc. v. Oracle USA, Inc., 139 S. Ct. 873 (2019)…………………………………19

iii

Rolex Watch United States Inc. v. Beckertime LLC, No. 4:20-CV-1060-0, 2023 U.S. Dist. LEXIS 108329 (N.D. Tex. Mar. 28, 2023)…………………….………………….19

SEC v. Hollier, No. 09-928, 2011 U.S. Dist. LEXIS 5086 (W.D. La. Jan. 11, 2011)……...….…18

Susan Wakeen Doll Co. v. Ashton Drake Galleries, 272 F.3d 441 (7th Cir.2001)………...….…18

Trevelyn Enterprises, L.L.C. v. Seabrook Marine L.L.C., 2020 U.S. Dist. LEXIS 261454 (E.D. La. 2020)…………………………………………………………...…..18

UM Corp. v. Tsuburaya Prods. Co., No. 18-55604, 2019 U.S. App. LEXIS 36134 (9th Cir. Dec. 5, 2019)……………………………………………...…..19

Ushijima v. Samsung Elecs. Co., No. A-12-CV-318-LY, 2015 U.S. Dist. LEXIS 109031 (W.D. Tex. July 30, 2015)……………………………………………….5

Virgin Records Amer., Inc. v. Thompson, 512 F.3d 724 (5th Cir. 2008)……………..………5

Viva Video, Inc. v. Cabrera, 9 F. App'x. 77 (2d Cir. 2001)……………………………………..…6

**STATUTES**

17 U.S.C. § 505……………………………………………………………………………………5

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

## INTRODUCTION

The Motion asserts that Defendant is entitled to recover ***$36,065.00*** in attorneys' fees/costs following the voluntary dismissal of Plaintiff's copyright infringement claim against Defendant. Somewhat ironically, the Motion contains ten (10) pages of background 'facts' purporting to detail Plaintiff's business practices dating back to 2012... yet the Motion largely ignores the abbreviated period of time ***actually*** relevant to this.  This was not done by accident.  Plaintiff filed its Complaint.  Rather than notify Plaintiff of any perceived deficiencies therewith, Defendant instead somehow managed to rack up > $36,000.00 in fees drafting a diatribe/attack on Plaintiff with the ***sole intent*** of setting up a fee motion.  Defendant should not be rewarded for manufacturing a fee claim, especially where Defendant has incurred $0.00 in fees and is in actuality represented by pro bono counsel who is himself waging a war in the blogosphere against Plaintiff and appears more concerned about advancing his own agenda than defending this and other actions.

## BACKGROUND

1.      This lawsuit concerns allegations that Defendant (a restaurant in Louisiana) displayed one of Plaintiff's copyrighted photographs (of fried chicken) (hereinafter, the "Work") on its website without having secured a license or permission from Plaintiff.

2.      As set forth in the Motion and in Defendant's previous motion to dismiss/motion for summary judgment, Plaintiff first discovered Defendant's unauthorized use of the Work in approximately June 2019.[1]

3.      At the time of Plaintiff's discovery, Plaintiff generated two (2) 'infringement notices' showing a screenshot of the use and the website URL on which the infringement was

---

[1]      See Declaration of Rebecca Jones, dated June 5, 2024 (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A," at ¶ 9.

found.[2]

4.    As demonstrated in that infringement notices, the website URLs on which the Work was found were: http://chickenkingla.com and http://chickenkingla.com/products.html.[3]

5.    Following Plaintiff's initial discovery of the alleged infringement, Plaintiff sent Defendant written demand letters notifying Defendant of the infringement and seeking payment of certain monies to settle Plaintiff's claim for copyright infringement.[4]

6.    Defendant ignored/did not respond to Plaintiff's 2019 demand letters.[5]

7.    In March 2021, Plaintiff discovered that Defendant was displaying/utilizing the Work on a different website URL, this time at http://chickenkingla.com/contact.html.[6]

8.    As a result, Plaintiff generated a new demand letter that was sent to Defendant which likewise notified Defendant of its infringement and sought payment of certain monies to settle Plaintiff's claim for copyright infringement.[7]

9.    At the time Plaintiff generated the above-referenced infringement notices and continuing through the filing of Plaintiff's voluntary dismissal in this action, Plaintiff was under the *mistaken* belief that each URL on which one of its copyrighted works was published constituted a *new* infringement for purposes of the statute of limitations.[8]

10.    In other words, Plaintiff believed that it had three (3) years from its March 2021

---

[2]    See D.E. 8-3, at pg. 7; see also Jones Decl., at ¶ 10.

[3]    See Jones Decl., at ¶ 11.

[4]    See D.E. 8-3, at pg. 6; see also Jones Decl., at ¶ 12.

[5]    See Jones Decl., at ¶ 13.

[6]    See D.E. 8-3, at pg. 15; see also Jones Decl., at ¶ 14.

[7]    See D.E. 8-3, at pg. 15; see also Jones Decl., at ¶ 15.

[8]    See Jones Decl., at ¶ 16.

discovery of the Work on http://chickenkingla.com/contact.html to file a lawsuit for infringement.[9]

11.    As acknowledged by the Affirmation of Stacy D. Bourdreaux [D.E. 8-3], Defendant did not respond to/ignored Plaintiff's 2021 letter, just as it did the 2019 letters.[10]

12.    In November 2022, Plaintiff requested that its outside counsel (CopyCat Legal PLLC) send another pre-suit demand letter to Defendant in hopes that a letter from a law firm would not be ignored.[11]

13.    As a result, on November 10, 2022, CopyCat Legal PLLC sent a pre-suit demand letter to Defendant via both Federal Express and e-mail.[12]

14.    On December 13, 2022 (after leaving a follow-up voicemail for Defendant), CopyCat Legal PLLC received a phone call from a woman associated with Defendant who indicated that she sent the November 10, 2022 letter to the district attorney and her attorney, both of which purportedly said the letter was a scam and not to contact CopyCat Legal.  The employee at CopyCat Legal who answered the call explained that the firm's attorneys could be independently verified on the Florida Bar website and that the letter was not a scam.[13]

15.    The woman who called then stated that all of the photos on Defendant's website are their own and that she would have her attorney contact CopyCat Legal prior to hanging up.[14]

16.    Subsequent thereto, CopyCat Legal attempted to call and/or e-mail Defendant at least six (6) more times in an effort to discuss the alleged infringement.  CopyCat Legal, however,

---

[9]    Id. at ¶ 17.

[10]    Id. at ¶ 18.

[11]    Id. at ¶ 19.

[12]    Id. at ¶ 20; see also Declaration of Daniel DeSouza, Esq., dated June 4, 2024 (the "DeSouza Decl."), a true and correct copy of which is attached hereto as Exhibit "B," at ¶ 4.

[13]    See DeSouza Decl., at ¶ 7.

[14]    Id. at ¶ 8.

was either unable to reach anyone or had to leave messages that were never returned.[15]

17.    Ultimately, believing that the statute of limitations on Plaintiff's claim would expire on March 8, 2024 (3 years from the March 8, 2021 infringement notice), Plaintiff retained counsel in Louisiana to file the Complaint in this action (which was filed on March 8, 2024).[16]

18.    On April 12, 2024, Defendant filed its motion to dismiss/motion for summary judgment [D.E. 8].

19.    In that motion, Defendant *for the first time* disclosed to Plaintiff's counsel that letters had been sent from Plaintiff to Defendant dating back to 2019, thus calling into question the statute of limitations issue.

20.    Prior to the filing of the motion to dismiss/motion for summary judgment, Plaintiff had no substantive contact with Defendant (other than the above-described phone call wherein Defendant threatened to report Plaintiff's counsel to the district attorney)… nor did Defendant's counsel make any effort to reach out to Plaintiff's counsel to notify it of the statute of limitations issue.

21.    Rather, and as will be discussed below, the motion to dismiss/motion for summary judgment appears to be a pre-planned scheme by Defendant's counsel (who presumably will not deny such) to 'trap' Plaintiff into facing a fee motion (i.e., by filing a motion for summary judgment, Defendant stopped Plaintiff from being able to file a notice of voluntary dismissal which would have avoided a fee motion altogether).

---

[15]    Id. at ¶ 9.

[16]    Id. at ¶ 10.

## ARGUMENT

### I.    Legal Standard

As the prevailing party in this lawsuit, Defendant seeks an award of fees under 17 U.S.C.

§ 505.  That statute provides, in relevant part, that:

> [T]he court in its discretion **may** allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court **may** also award a reasonable attorney's fee to the prevailing party as part of the costs.[17]

Although an award of fees in copyright actions is discretionary, such fee awards are "the rule rather

than the exception and should be awarded routinely." Virgin Records Amer., Inc. v. Thompson,

512 F.3d 724, 726 (5th Cir. 2008) (internal quotation omitted).  However, the award of attorneys'

fees is not automatic, and a party's entitlement to attorneys' fees must be proven by a

preponderance of the evidence. See Ushijima v. Samsung Elecs. Co., No. A-12-CV-318-LY, 2015

U.S. Dist. LEXIS 109031, at *3 (W.D. Tex. July 30, 2015) (citing Octane Fitness, LLC v. ICON

Health & Fitness, Inc., 572 U.S. 545 (2014)).  The Supreme Court has set out four nonexclusive

factors that courts should consider in making awards of attorneys' fees: (1) frivolousness, (2)

motivation, (3) objective unreasonableness, both factually and legally, and (4) the need in

particular circumstances to advance considerations of compensation and deterrence. See Virgin

Records Am. Inc., 512 F.3d at 726 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19

(1994)).

### II.    The Fogerty Factors Do Not Support an Award of Fees

#### A.    *Frivolousness or Objective Unreasonableness*

"'Objective unreasonableness' is generally used to describe claims that have no legal or

---

[17]    See 17 U.S.C. § 505 (emphasis added).

factual support." <u>Viva Video, Inc. v. Cabrera</u>, 9 F. App'x. 77, 80 (2d Cir. 2001) (per curiam). "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." <u>Matthew Bender & Co. v. West Publ'g Co.</u>, 240 F.3d 116, 122 (2d Cir. 2001). There is a difference between a suit that is "without merit" and one that is "patently frivolous." <u>See</u> <u>Positive Black Talk Inc. v. Cash Money Records, Inc.</u>, 394 F.3d 357, 382 n.23 (5th Cir. 2004), abrogated on other grounds by <u>Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). In <u>Creations Unlimited, Inc. v. McCain</u>, 112 F.3d 814 (5th Cir. 1997), for example, the Fifth Circuit upheld the district court's refusal to award attorneys' fees to the defendant despite finding on summary judgment that the works in question "differed… in too many respects for a layman to conclude that the works were substantially similar." <u>Id.</u> at 816. The district court had concluded that the legal claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." <u>Creations Unlimited, Inc. v. McCain</u>, 889 F. Supp. 952, 954 (S.D. Miss. 1995).

Here, Plaintiff's claim for infringement was neither frivolous nor objectively unreasonable. Notably, Plaintiff is not in the 'litigation business' as asserted by Defendant but is rather in the business of creating/licensing content for its customers.[18] Importantly, Plaintiff is the sole content provider to its sister company, Bad-Adz Digital, and its customers rely on Plaintiff's photographic library in creating their own grocery ads/other advertisements.[19] There is nothing frivolous about a copyright owner, who markets its work for important uses across the country, taking action to protect that work from infringers.

---

[18]    <u>See</u> Jones Decl., at ¶ 3.

[19]    <u>Id.</u>

As discussed above, Defendant was wholly unresponsive to Plaintiff's attempts to resolve this matter pre-suit. Defendant's only 'substantive' contact with Plaintiff or its counsel was to threaten prosecution if Plaintiff's counsel dared reach out again. While the Boudreaux Affirmation speculates that Defendant may have been licensed to use the Work,[20] such speculation is contrary to the allegations of the Complaint and curiously raised *for the first time* after this lawsuit was filed. Indeed, the November 22, 2022 letter from Plaintiff's counsel specifically invited Defendant to provide any evidence of licensing if it contended its use of the Work was licensed:[21]

> If our client is mistaken or if you believe the photograph was previously licensed through our client or some other party, please contact us immediately with evidence of the prior licensing. If we do not hear from you *within fourteen (14) days from the date of this letter*, we will be forced to assume that the photograph was *not* properly licensed and will take appropriate legal action to enforce our client's rights.

While Defendant believed such to be a "scam," the fact remains that it was provided every opportunity – over a period of years – to provide any evidence of licensing or even to discuss the matter with Plaintiff (directly) or its counsel. Defendant chose instead to ignore both Plaintiff and its counsel in favor of a weak, hearsay statement that "I have since been advised" that there may have been a license for the Work.

Defendant not only refused to discuss the matter pre-suit but likewise refused to remove the Work from its website pre-suit. Although Plaintiff notified Defendant multiple times over a period of years, the Work was still published/displayed on Defendant's website at the time the Complaint was filed. This is evidenced by the most recent screenshot of Defendant's website (February 23, 2024) as captured by the Wayback Machine (https://web.archive.org/web/20240223071816/http://chickenkingla.com/products.html), a digital

---

[20]    See D.E. 8-3, at ¶ 5.

[21]    See D.E. 15-2, at pg. 65.

archive of the World Wide Web founded by the Internet Archive. Courts often take judicial notice of the Wayback machine's captures/screenshots of websites. See, e.g. Martins v. 3PD, Case No. 11-11313-DPW, 2013 U.S. Dist. LEXIS 45753, at *47-49 n.8 (D. Mass. Mar. 28, 2013) ("I take judicial notice of various historical versions of the 3PD website available on the Internet Archive . . . as facts readily determinable by resorts to a source whose accuracy cannot reasonably be questioned."); Pond Guy, Inc. v. Aquascape Design, Inc., Case No. 13-13229, 2014 U.S. Dist. LEXIS 85504, at *9 (E.D. Mich. June 24, 2014) (taking judicial notice of the parties' historical presence as represented by the Internet Archive because "[a]s a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for taking of judicial notice.").

Faced with a Defendant that refused to participate in any pre-suit discussions and refused to remove the Work from its website (notwithstanding being notified by a law firm in November 2022 that its display of such constituted infringement), Plaintiff was left with little choice but to retain counsel in a foreign jurisdiction and pursue its infringement claim that it believed to be expiring in March 2024.

Nor was it unreasonable for Plaintiff to believe that the presence of the Work on different sub-pages of Defendant's website constituted separate and distinct infringements for purposes of claim accrual. A claim for copyright infringement must be filed within three years of the claim's accrual. See 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provision of this title unless it is commenced within three years after the claim accrued."). Like other Circuits, the Fifth Circuit applies the discovery rule to determine accrual of claims for copyright infringement: claims for copyright infringement accrue upon actual or constructive discovery of the relevant infringement. See Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 393 (5th Cir. 2014)

(citing Jordan v. Sony BMG Music Entm't Inc., 354 Fed. Appx. 942, 945 (5th Cir. 2009)).

Under "the separate-accrual rule," "the statute of limitations runs separately from each violation" of the Copyright Act, meaning that "each infringing act starts a new limitations period." Petrella v. MGM, 572 U.S. 663, 673 (2014). Here, Plaintiff *mistakenly* interpreted the separate accrual rule to mean that Defendant posting the Work on separate pages of its website constituted independent acts of infringement for purposes of claim accrual. Plaintiff, however, was unaware of law providing that "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 701 (9th Cir. 2008) (citing holdings from the Second, Fourth, Fifth, and Sixth Circuits).

Given that Defendant's posting of the Work on different sub-pages of its website did not appear to trigger the 'separate accrual' rule, Plaintiff was faced with a difficult choice – continue pursuing an otherwise valid infringement claim that may ultimately be time-barred or agree to voluntarily dismiss and potentially face a fee motion from Defendant. Weighing its options, Plaintiff made the reasonable/responsible choice of dismissing the case.

Notably, the Motion refers to Plaintiff's damages 'theories' and depositions in other cases as purported evidence of Plaintiff's positions taken in ***this case***. Defendant ignores, of course, that Plaintiff has not taken any positions in this case other than filing a Complaint that seeks actual and/or statutory damages up to the maximum provided for under the Copyright Act. While Defendant takes issue with Plaintiff's damages theories as 'unreasonable,' those theories were not litigated here. They have, however, been discussed in a number of other judicial decisions in which Plaintiff's damages theories were accepted by a multitude of courts across the country.[22]

---

[22]    See, e.g. Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022); Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S.

The point remains, however, that Defendant has not identified ***any*** unreasonable action taken by Plaintiff in this case other than attempting to protect its intellectual property from an infringer who refused to stop infringing despite multiple warnings.

### B.    *Motivation*

Here, Defendant speculates that Plaintiff is not in the business of creating photographs but rather "taking advantage of the lack of sophistication of the small businesses that it targets."  As a threshold matter, there is zero evidence before the Court supporting Defendant's nonsensical assertions.  Indeed, the only 'fact' pointed to by Defendant is that Plaintiff has filed a large number of lawsuits with respect to protecting its library of > 18,000 photographs.  But, as adeptly discussed in <u>Malibu Media, LLC v. Doe</u>, No. 13 C 3648, 2014 U.S. Dist. LEXIS 77929, at *6–8 (N.D. Ill. June 9, 2014) (internal quotation marks and citation omitted):

---

Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; <u>Prepared Food Photos, Inc. v. Miami Beach 411 Corp.</u>, No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Fat Daddy Co.</u>, No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.</u>, No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.</u>, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc.</u>, Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Exec. Dining Club, Inc.</u>, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Shadowbrook Farm LLC</u>, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. WaDaYaNeed, LLC</u>, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp.</u>, No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc.</u>, No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) (rejecting report & recommendation to award $1,000.00 in statutory damages and instead awarding $47,952.00 in statutory damages, representing the $11,998.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

> ***It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement.*** Courts in this district and elsewhere frequently get, for example, lawsuits by trademark owners against multiple websites that sell counterfeited products bearing the trademark owners' marks. By way of example, a review of the index of this district's filings reflects that Coach, Inc. which produces handbags, accessories, footwear, clothing, etc. bearing the company's trademarks, has filed 57 lawsuits in this district alone within the past four years, many of them naming dozens and indeed hundreds of entities as defendants. And a search of this district's index for suits naming "The Partnerships and Unincorporated Associations Identified on Schedule A," a term commonly used by trademark holders to sue multiple websites selling counterfeit products, reveals over 75 such lawsuits in the past year alone by various trademark holders.
>
> As best as the Court can determine, not one of these has led to criticism of the intellectual property right holder for misusing its trademark, let alone to dismissal of a case for that reason. Presumably the reason is that although cases involving the doctrine of copyright misuse refer to suing on a copyright hoping to force a settlement or even achieve an outright victory over an opponent that may lack the resources or the legal sophistication to resist effectively, the predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect. That element is missing from Doe's affirmative defense. The Court is hard-pressed to see why Malibu Media's large-volume litigation should be treated differently from that of Coach or other intellectual property rights holders simply because Malibu's intellectual property rights involve pornographic films.

That Plaintiff has pursued many claims for infringement is not somehow evidence of improper motivation. Indeed, with respect to Defendant in particular, it is difficult to imagine a better motive for pursuit of this lawsuit than Defendant's recalcitrance in refusing to discuss the matter pre-suit and refusing to remove the Work from its website notwithstanding multiple demands for such. Plaintiff has the exclusive right under the Copyright Act to display the Work, and Plaintiff was left with little choice but to pursue this lawsuit to effectuate Defendant's removal of such from its

website.[23]

On the other hand, Defendant's motive and positions taken in this lawsuit are, at best, questionable. Defendant is represented in this lawsuit by Paul Alan Levy, Esq., an attorney with Public Citizen Litigation Group who has spent years blogging about Plaintiff and soliciting clients for which he can use to test his various theories/challenges to Plaintiff's litigation activity. Mr. Levy is an experienced litigator who appears to be using this case (and others) to market himself and his challenges against Plaintiff. Indeed, one need look no further than Mr. Levy's own blogs to reveal his own strategy here in keeping quiet in the background and then springing a motion to dismiss/motion for summary judgment on Plaintiff that raises for the first time Plaintiff's 2019 infringement notices as a basis for dismissal. By filing a motion for summary judgment (or simply answering the Complaint), Mr. Levy could assure that Plaintiff could not voluntarily dismiss (without Defendant's consent or court approval) and that he could then file a motion for fees. Indeed, in a February 29, 2024 blog discussing another case filed by Plaintiff that Mr. Levy involved himself in, he boldly proclaims:[24]

> But here it was a plaintiff, and once we filed an answer, it could not unilaterally drop the case without prejudice: it would need either our consent or a court order. Thus, we would be able to use a potential claim for award of attorney fees as leverage to force PFP to dismiss the complaint with prejudice.

And in an earlier (May 19, 2023) blog post (https://clpblog.citizen.org/resistance-to-extortionate-copyright-infringement-claims-by-prepared-food-photos/), Mr. Levy likewise discusses how he could use a fee award to discourage Plaintiff from making "outrageous" demands.

Lest there by any confusion, Mr. Levy is the proverbial tail wagging the dog here. There

---

[23]     See Jones Decl., at ¶ 21.

[24]     See     https://clpblog.citizen.org/is-prepared-food-photos-running-a-scam-not-just-a-scheme-to-extract-excessive-rents/.

is little question that Mr. Levy was well-aware of Plaintiff's 2019 infringement notices and, rather than contact Plaintiff's counsel to notify it of the statute of limitations issue, simply kept quiet and used this case to advance his oft-discussed plans of seeking fees against Plaintiff.  That Mr. Levy is waging his own war against Plaintiff, whether in the blogosphere or in court, does not warrant a fee award here.  Had Defendant done the prudent thing – i.e., notifying Plaintiff's counsel of the statute of limitations issue – Plaintiff would have done what it did upon receipt of the motion to dismiss/motion for summary judgment (namely, dismiss the case without the need for the parties to have incurred fees/costs).   Defendant thus unnecessarily incurred fees in attempting to manufacture a fee motion… and such should not be rewarded by the Court.

If anything, this case is remarkably similar to the facts before the court in Affordable Aerial Photography, Inc. v. WC Realty Grp., Inc., No. 22-81256-CV-MIDDLEBROOKS, 2023 U.S. Dist. LEXIS 63034 (S.D. Fla. Apr. 6, 2023).  There (as here), the plaintiff filed a voluntary dismissal (with prejudice) days after the defendant filed a motion to dismiss.  In denying the defendant's subsequent motion for fees, Judge Middlebrooks stated:

> This case ended with the filing of a voluntary dismissal with prejudice less than two months after the case was filed, only days after a motion to dismiss the Amended Complaint. (DE 23). In support of its request for fees, Defendant points to deficiencies in the allegations and suggests that Plaintiff knew that its allegations lacked factual support. (DE 29 at 14-15). But in dismissing the case I made no determination as to the validity of the Amended Complaint. The fee litigation has surpassed, both in tone and expenditure of resources, the effort spent prior to dismissal. An award of fees here would not advance the purposes of Section 505 of the Copyright Act.

WC Realty Grp., Inc., 2023 U.S. Dist. LEXIS 63034, at *2.  Notably, the docket in WC Realty Grp., Inc. was far more active than this case – there was an original motion to dismiss, a settlement with one of the defendants, an amended complaint, and a second motion to dismiss.  Here, other than an original Complaint and a motion to dismiss/motion for summary judgment, there was no

other docket activity.  And while the parties' stipulation of dismissal was not filed until May 1, 2024 (19 days after the motion to dismiss/motion for summary judgment was filed), this was solely due to the parties negotiating the language of the stipulation.  Indeed, by April 18, 2024 (3 days after the motion to dismiss/motion for summary judgment was filed), counsel for Plaintiff had already circulated a stipulation of dismissal for Defendant's review:



Awarding a party attorney's fees must advance the purposes of the Copyright Act, primarily to "encourage the production of original literary, artistic, and musical expression for the good of the public."  Fogerty, 510 U.S. at 524. This purpose is not promoted by awarding attorney's fees to a prevailing defendant "when the plaintiff has advanced a reasonable, yet unsuccessful claim."  Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 628 (6th Cir. 2004) (citing Matthew Bender & Co., 240 F.3d at 122).  Awarding Defendant fees here does not advance the purposes of the Copyright Act when Defendant refused to engage in any pre-suit communications (other than threats), Defendant refused to remove the Work from its website, Defendant hatched a plan to manufacture a fee motion, and where Plaintiff itself agreed to dismiss the case within days of a motion to dismiss being filed.  As with WC Realty Grp., Inc., an award

of fees would not be proper here.

### C.    Compensation and Deterrence

Considerations of compensation and deterrence do not weigh in favor of a fee award here. None of the other <u>Fogerty</u> factors weighs in favor of awarding fees, and Plaintiff brought this lawsuit with the good faith belief that its copyright rights had been violated and were ongoing. <u>See, e.g.</u> <u>Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.</u>, 2017 U.S. Dist. LEXIS 124082, at *5 (S.D.N.Y. Aug. 4, 2017) ("[A]s already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees."). Here, neither Plaintiff nor those similarly situated should be 'deterred' from pursuing claims against infringers who thumb their noses against a copyright owner's rights (i.e., refuse to remove a copyrighted work from display despite repeated demands for such). Here, Defendant seeks to punish Plaintiff for filing 270 copyright lawsuits, yet Defendant does ***nothing*** to analyze the facts of those cases, the legitimacy of Plaintiff's claims, or the reason(s) for the filing of any such claim. It is far easier for Defendant to take a simplistic approach of blaming Plaintiff (the victim of copyright theft) for filing lawsuits than for Defendant to acknowledge its own conduct in ignoring Plaintiff's pre-suit correspondence and refusing to remove the Work from its website.

Further, Defendant is apparently represented in this matter on a pro bono basis, meaning Defendant has paid ***$0.00*** in attorneys' fees for representation in this matter. Defendant is thus not 'injured' by not reimbursing it for fees that it never incurred.

## III.    Unreasonableness of Defendant's Fees and Costs

Finally, ***if*** the Court chooses to award fees, a significant amount of fees being sought by Defendant are plainly excessive. First, the number of hours expended by Defendant's attorneys is, in a word, astonishing. According to the Motion, Defendant's attorneys expended (collectively)

*75.7 hours* in defending this action… yet nothing occurred in this lawsuit other than the filing of a *14-page* motion to dismiss/motion for summary judgment.  According to Mr. Levy's billing records, nearly ½ of his 63.8 hours incurred on this matter were spent researching/drafting the Motion (for fees).  These amounts are excessive and indicative of Mr. Levy's seeming obsession with Plaintiff.  Between Mr. Levy and Ms. Cross, more than *40 hours* were billed for drafting the motion to dismiss/motion for summary judgment and/or for Mr. Levy's pro hac vice admission. This is, without question, unreasonable given the straightforward nature of the motion to dismiss/motion for summary judgment and the fact that Mr. Levy likely had already amassed a trove of caselaw in his dossier on Plaintiff for which he was waiting to unleash.  At most, Defendant's counsel should have expended no more than 10 hours in prepping/filing the motion to dismiss/motion for summary judgment and certainly no more than half that in moving for fees.

With respect to hourly rates, Plaintiff does not challenge Ms. Cross' $350 rate.  The Motion, however, attempts to argue that Mr. Levy's D.C. rate should be applied here because Defendant was somehow unable to find counsel in Louisiana who could represent it and because Daniel DeSouza, Esq. (the attorney who represents Plaintiff in various lawsuits across the country) has argued that his $450 rate should apply in those cases (rather than a forum rate).  Neither argument merits serious discussion.

First, the Second Affirmation of Stacy Deville Boudreaux [D.E. 15-4] does not support Defendant's concocted story of being unable to find counsel in Louisiana.  That affirmation merely reflects that Ms. Boudreaux contacted the district attorney who referred her to a local law firm, but the attorneys she intended to speak with were "out of town" at that time.  There are certainly no shortage of Louisiana intellectual property attorneys that Defendant could have consulted (see, e.g. https://www.justia.com/lawyers/intellectual-property/louisiana), and the Motion does nothing to

argue that any such attorney would either not take Defendant's case or was somehow incapable of filing a motion to dismiss/motion for summary judgment. If anything, the Second Affirmation raises serious questions about Mr. Levy actively soliciting Ms. Boudreaux to represent Defendant in this lawsuit ("I first learned that Chicken King had been sued from telephone and Facebook messages left by Paul Levy.") and his motivations for doing so (i.e., finding a prop for which he could advance his own self-interests against Plaintiff).

Second, Defendant's reference to Mr. DeSouza seeking a $450.00 hourly rate regardless of venue is not well-taken. In each case in which Plaintiff was represented by CopyCat Legal and sought attorneys' fees, Plaintiff's counsel took into consideration the 'forum rate' applicable in such jurisdiction in seeking fees. For example, in <u>Prepared Food Photos, Inc. v. Wadayaneed</u>, LLC, Case No. 1:22-cv-01270 (N.D.N.Y.), Mr. DeSouza's fee declaration makes clear: "given that courts in this district typically find $250 - $350/hour to be reasonable for experienced counsel, for purposes of this case I will voluntarily reduce my rate to $325 per hour." The same voluntary reduction was applied in <u>Prepared Food Photos, Inc. v. Shadowbrook Farm LLC</u>, Case No. 1:22-cv-00704 (N.D.N.Y.) given the lower rates generally awarded in the Northern District of New York.

Here, Mr. Levy's proffered $500/hr rate does not appear to be the market rate for attorneys within the Western District of Louisiana. <u>See, e.g.</u> <u>Olive v. Tubbs</u>, No. 3:22-CV-05205, 2023 U.S. Dist. LEXIS 175984, at *21 (W.D. La. Sep. 29, 2023) ("Ultimately, the Court finds that reasonable rates in the Monroe area generally range from $200.00 to $300.00 per hour for attorneys and $100.00 per hour for paralegals."); <u>Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev. Inc.</u>, No. 6:18-CV-01606, 2020 U.S. Dist. LEXIS 241335, at *12 (W.D. La. Dec. 22, 2020) ("The Affidavit of Frank Neuner [Exhibit A-5] filed by Colonial Oaks Living and Colonial Oaks Memory

in the arbitration proceeding, shows prevailing market rates in the 15th Judicial District for commercial litigation range from $275.00 to $400.00 per hour for senior partners with twenty-five plus years of experience and from $250.00 to $325.00 per hour for junior partners and associates and $150.00 per hour for paralegals."); SEC v. Hollier, No. 09-928, 2011 U.S. Dist. LEXIS 5086, at *3-4 (W.D. La. Jan. 11, 2011) ("the undersigned finds the prevailing market rate in Lafayette, Louisiana, is $150 per hour given the nature of the matter, the complexity of the issues and the other Johnson factors."); Trevelyn Enterprises, L.L.C. v. Seabrook Marine L.L.C., 2020 U.S. Dist. LEXIS 261454, at *3 (E.D. La. 2020) (attorney was entitled to recover $360/hour for 16.9 hours spent on a motion for protective order); Lee v. Pearl River Basin Land & Development Company, L.L.C., 2014 U.S. Dist. LEXIS 17072, at *3 (E.D. La. 2014) (attorney was entitled to recover $155/hour for 4.5 hours spent on motions). If anything, the Court should not find a rate beyond that of Ms. Cross ($350/hr) reasonable under the circumstances. Thus, while the Court should not grant fees to Defendant, any such award should be substantially reduced to account for both the reasonable hours and reasonable rate discussed herein.

## IV. The Costs Sought by the Motion are Not Taxable

Finally, the Motion seeks $105.00 in costs with respect to Mr. Levy's pro hac vice application in this case. This cost, however, is not taxable. Because 17 U.S.C. § 505 specifically applies to copyright cases, it governs the analysis here. See Guzman v. Hacienda Records, No. 6:12-CV-42, 2015 U.S. Dist. LEXIS 108360, at *1 (S.D. Tex. Aug. 18, 2015) (citing Susan Wakeen Doll Co. v. Ashton Drake Galleries, 272 F.3d 441, 458 (7th Cir.2001) ("[A]ny award of fees and non-taxable costs must come through [section 505], and not through the general cost provisions of 28 U.S.C. § 1920.")).

Although Circuit courts have been split on whether the reference to "full costs" in § 505 is limited to costs enumerated in § 1920 or is broader in scope, the United States Supreme Court

18

recently held that "§ 505's authorization for the award of 'full costs'… covers only the six categories specified in the general costs statute, codified at §§ 1821 and 1920." <u>UM Corp. v. Tsuburaya Prods. Co.</u>, No. 18-55604, 2019 U.S. App. LEXIS 36134, at *2 (9th Cir. Dec. 5, 2019) (quoting <u>Rimini Street, Inc. v. Oracle USA, Inc.</u>, 139 S. Ct. 873, 876 (2019)). The 6 categories specified in § 1920 do not include pro hac vice admission fees and therefore such is not taxable. <u>See</u> <u>Rolex Watch United States Inc. v. Beckertime LLC</u>, No. 4:20-CV-1060-0, 2023 U.S. Dist. LEXIS 108329, at *5 (N.D. Tex. Mar. 28, 2023) ("[T]he Court FINDS and CONCLUDES that such costs are not properly taxed in this case as fees of the clerk as such fees are an expense that an attorney pays for the privilege of practicing law in a district and should not be taxed to a [Defendant] simply because [Plaintiff] chooses to be represented by counsel not admitted to practice in the district.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion and (b) for such further relief as the Court deems proper.

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

By: /s/*John E. W. Baay II*

**GIEGER, LABORDE & LAPEROUSE, LLC**
LA Bar #22928
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Telephone: (504) 561-0400
jbaay@gllaw.com

*Attorneys for Plaintiff*

19