UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 6:24-cv-00351-RRS-DGA |
| CLYDE'S CHICKEN KING, INC. d/b/a CHICKEN KING, | ) ) ) | |
| Defendant. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
APPLICATION FOR ATTORNEY FEES AND COSTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

A.   The Lawsuit Was Objectively Unreasonable in Three Respects. . . . . . . . . . . . . . . . . . . 1

1.  The Suit Was Filed Long After the Statute of Limitations Had Expired. . . . . . . . . . . 1

2.  Suing for Statutory Damages and Attorney Fees Was Frivolous. . . . . . . . . . . . . . . . 3

3.  Plaintiff's Actual Damages Theory Was Objectively Unreasonable. . . . . . . . . . . . . . 4

B.   Motivation, Considerations of Compensation and Deterrence and the Policies of the Copyright Act Also Support an Award of Attorney Fees. . . . . . . . . . . . . . . . . . . . . . . . . 5

C.   The Amount of Fees Sought Is Reasonable.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**CASES**                                                                              **page**

*Batiste v. Lewis*,
    976 F.3d 493 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Bell v. Eagle Mountain Saginaw Independent School District*,
    27 F.4th 313 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Bell v. Oakland Community Pools Project*,
    2020 WL 4458890 (N.D. Cal. May 4, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Derek Andrew v. Poof Apparel Corp.*,
    528 F3d 696 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Primus*,
    436 U.S. 412 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kirtsaeng v. John Wiley & Sons*,
    579 U.S. 197 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

*Maine Audubon Soc. v. Purslow*,
    907 F.2d 265 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Malibu Media v. Doe*,
    2014 WL 2581168 (N.D. Ill. June 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zauderer v. Office of Disciplinary Counsel*,
    471 U.S. 626 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES**

American Bar Association Model Rules
    Rule 3.3(d) and Comment 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Evidence
    Rule 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Louisiana Rules of Professional Conduct
    Rule 3.3(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**OTHER AUTHORITIES**

Yeh, Statutory Damage Awards in File Sharing Cases
      (Congressional Research Service 2010),
      available at https://sgp.fas.org/crs/misc/R41415.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The facts presented in support of defendant Chicken King's motion for attorney fees show that plaintiff Prepared Food Photos, Inc. ("PFP") has systematically pursued small businesses to extract legally unjustified settlements for alleged copyright infringement by looking for alleged infringements of its decades-old photo library, then threatening and suing mom and pop companies like Chicken King for tens of thousands of dollars each in damages.  PFP generally avoids contested litigation by filing suit only when it expects the suit to be undefended.   Once it sues a small business, either the defendant pays quickly, or the defendant does not appear and PFP seeks a default judgment on the argument that the complaint's allegations are uncontested and hence merit a damages award between $24,000 and $72,000 plus attorney fees.   Here, however, PFP filed a lawsuit against a defendant that did defend itself.  As the motion for an award of attorney fees explained, the lawsuit was objectively unreasonable for three separate reasons: (1) PFP's own records showed that the statute of limitations had long expired; (2) the claim for statutory damages and attorney fees was squarely foreclosed by the language of the Copyright Act and by facts of which PFP should have been aware; and (3) the contention that PFP's supposed $11,992 per year subscription model is a basis for a large damages award is contrary to longstanding precedent. Because this lawsuit was patently unreasonable—the most important of the factors under *Kirtsaeng v. John Wiley & Sons*, 579 U.S. 197 (2016)—and because the facts in the record cry out for an award that will deter PFP's continued scheme of extorting small businesses by threatening exorbitant damages, the motion for attorney fees should be granted.

**A.  The Filing of This Lawsuit Was Objectively Unreasonable in Three Respects.**

**1.  The Suit Was Filed Long After the Statute of Limitations Had Expired.**

As the briefs in support of the motions for summary judgment and for attorney fees explained, defendant Chicken King first posted the photo at issue in 2016, and the statute of

limitations for PFP's copyright claim expired in 2019. PFP's own records revealed that PFP discovered the alleged infringement much earlier, both in 2019 and 2021.  Therefore, when Chicken King moved to dismiss or for summary judgment, PFP dismissed its case.

In disputing this aspect of the fee application, PFP's Opposition Memorandum, DN-17 ("Opp.") argues, based on a declaration from its Corporate Secretary, Rebecca Jones, that it had a reasonable justification for filing suit on March 8, 2024, because it was not until March 8, 2021 that it discovered the use of its photo on a different page of the Chicken King web site, www.chickenkingla.com/contact.  Opp. at 2, 9-10.  This argument is a post-hoc rationalization for this lawsuit, which alleged that Chicken King infringed PFP's copyright by posting its image at www.chickenkingla.com/products.  DN-1 ¶ 16.  Moreover, the complaint did not allege that the claimed infringement was discovered in March 2021; it alleged instead that the infringement was discovered in August 2022.  *Id.* ¶ 21. The Declaration of Daniel DeSouza, PFP's lead counsel, effectively admits that the allegation of discovery in 2022 was false.[1]

PFP's contention that an infringement was newly found at www.chickenkingla.com/contact is likewise mistaken; at best, the Jones Affidavit reflects that neither Jones nor her counsel, who have been making millions of dollars from reverse image searching, understand what they saw when they examined Chicken King's website both now and as it was in 2019 and 2021.  The attached Third Levy Affirmation ("Third Levy Aff."), ¶¶ 3-6, explains what the Court can see for itself: the photos are mounted in revolving "image carousels" that can equally be seen from the site's home page and its "contact" and "products" pages.  If PFP's owner did not see the fried chicken image on the

---

[1] Defendant assumes that PFP's local counsel Mr. Baay was not aware that he was signing a complaint with false allegations.

contacts page in 2019 when, as Exhibit D reflects, he saw it on the home page and the products page, DN 8-4, page 42, he did not look carefully.  His carelessness in that regard would not justify invocation of the discovery rule.

PFP cites a Ninth Circuit decision that, it contends, could have reasonably supported an argument that its suit was timely on a continuing violation theory.  Opp. 9, citing *Derek Andrew v. Poof Apparel Corp.*, 528 F3d 696 (2008).  In *Poof Apparel*, the infringer printed a series of hang tags for its clothing line that contained infringing contents and sent the tags to stores over a period of years, and the court held that each new tag was a new infringement.  That decision, about repeated acts by a defendant, does not address the situation here.  Rather, as many courts have held, the mere fact that an image remains online does not mean that a new copyright infringement occurs every time a new Internet user views the image. *Bell v. Oakland Community Pools Project*, 2020 WL 4458890, at *5 (N.D. Cal. May 4, 2020) (collecting cases).

**2.  PFP's Claim for Statutory Damages and Attorney Fees Was Frivolous**.

PFP does not contend that it had any reasonable basis for seeking statutory damages or attorney fees in this case.  Instead, it argues that the issue of damages was not presented in this case because PFP dismissed the case after Chicken King sought dismissal and summary judgment on limitations grounds. But PFP alleged claims for statutory damages and attorney fees, DN 1 ¶¶ 33-34, Prayer for Relief ¶¶ c and d.  Moreover, several false allegations in the complaint—paragraph 16 (that the alleged infringement began after registration), as well as the allegations about willfulness in paragraphs 29 and 30—would enable a default judgment motion to recite those "uncontested" facts as a basis for a high statutory damages award.  Indeed, in the many cases where PFP seeks a default judgment when the defendant has not hired counsel to defend itself, the motion consistently

-3-

relies on comparable allegations in the complaints in those cases, contending that because defendant defaulted, factual allegations in the complaint must be taken as true.  Along with declarations from Rebecca Jones comparable to the declaration now submitted in this case, PFP uses allegations comparable to DN-1 ¶¶ 16, 29 and 30 to justify large statutory damages.  See Opp. at 9-10 n.22 (listing dockets for cases where PFP obtained a default judgment).  PFP had no reason to allege paragraphs 16, 29 and 30 unless it intended to deploy these arguments at the default judgment stage of this case.

### 3.  PFP's Actual Damages Theory Was Objectively Unreasonable.

PFP posits two different theories as a basis for denying that its actual damages theory was a third objectively unreasonable claim in the complaint. First, as with statutory damages and attorney fees, PFP argues that the issue of actual damages was never presented in this case.  Opp. 9.  Again, that contention is erroneous.  The complaint lays out in ¶¶ 7-9 allegations that PFP would have used to contend that its actual damages amount to $11,992 per year, and again, review of the dockets in the default judgment cases cited in footnote 22 of the Opposition shows how comparable paragraphs in the complaints in those cases were invoked to seek five-figure awards of actual damages, relying on the default as a basis for taking the subscription allegations as true, and then seeking a multiplier of the actual damages figure as the basis for the amount of statutory damages claimed.  Moreover, these allegations in the complaint should be considered in conjunction with PFP's demand letter, which explained that the supposed subscription model, along with a statutory damages multiplier, would be presented to the Court if Chicken King did not ante up a payment of $30,000.  See DN 15-2, Exhibit N, at 3-4.  There is no reason not to take PFP's Florida counsel at his word in describing in his demand letter the theory of actual and statutory damages theories that would be presented in

this litigation.

Second, PFP argues that, because several courts have upheld its damages theories, its position could not be unreasonable.  Opp. 9-10 and n.22.  But every one of the decisions cited was a default judgment that was secured, not by adjudication after adversary proceedings, but rather by ex parte submission that obscured the actual facts about the level of subscription payments during the damages periods and that failed to cite well-settled appellate precedent about the way in which actual damages are calculated in copyright cases.  Indeed, in not a single one of those eleven default judgment proceedings did PFP's briefs call the trial judge's attention to the appellate decisions cited in Chicken King's briefs to this Court, even when, as in the five default judgment proceedings in the E.D.N.Y, S.D.N.Y, and N.D.N.Y. cited in the footnote, there was controlling authority in that circuit against its position.  In addressing whether PFP's damages claim here was objectively unreasonable, the Court therefore should place no reliance on the default judgments.[2]

## B.   Motivation, Considerations of Compensation and Deterrence and the Policies of the Copyright Act Also Support an Award of Attorney Fees.

PFP dismisses as "nonsensical" "speculat[ion]" supported by "zero evidence" Chicken King's argument that PFP is primarily in the business of copyright enforcement, not the business of creating and licensing copyrighted photographs.  Opp. 10.  The undisputed evidence for Chicken King's characterization of PFP's main business was set forth at pages 2 to 4 of Chicken King's opening memorandum supporting fees, relying in turn on the affidavits and exhibits submitted in

---

[2]  *See Maine Audubon Soc. v. Purslow,* 907 F.2d 265, 268 (1st Cir. 1990) (where counsel appears ex parte, the court is entitled to expect an even greater degree of thoroughness and candor about the state of the law from unopposed counsel than in the typical adversarial setting).  Moreover, when lawyers present arguments ex parte, they have an ethical obligation to present contrary facts so that the court will not be misled. Louisiana Rules of Professional Conduct, Rule 3.3(d); ABA Model Rules, Rule 3.3(d) and Comment 14.

support of the fees motion and motion for summary judgment, as well as the Statement of Material

Facts ("SMF"), none of which is contradicted by any evidence apart from conclusory averments in

at ¶¶ 3, 4 and 7 of the Jones Declaration that repeat the allegation in ¶ 6 of the complaint.[3]

      PFP also argues that, as a copyright holder facing widespread infringement of its works. it

has no choice but to file infringement lawsuits.  Opp. at 10-11, quoting *Malibu Media v. Doe*, 2014

WL 2581168, at *3 (N.D. Ill. June 9, 2014).  The decision in *Malibu Media* has no bearing on this

case—it held that a Bit Torrent user who downloaded plaintiff's movie and distributed it to others

online could not be excused from infringement **liability** simply because *Malibu Media* had sued

many other Bit Torrent users for infringement. *Malibu Media* did not address appropriate levels of

damages.[4]  And although copyright users may properly sue many defendants for their infringements,

the Fifth Circuit has repeatedly noted that when a copyright owner appears to be in the business of

litigation, or when it is a serial litigant that persistently seeks exorbitant settlements, fee awards are

warranted as a deterrent.  *See*, *e.g.*, *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313

(5th Cir. 2022), *Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020).

      PFP contends that Chicken King's failure to take down the photo in response to its demand

letter, despite the fact that Chicken King allegedly had no license, forced it to file suit.  Opp. 11-12,

14, 15.  But as the DeSouza Declaration confirms, a Chicken King representative (Stacy Boudreaux,

---

    [3] PFP has refused to allow Jones to be cross-examined on the conclusory characterizations of her company's business.  Levy Third Aff. ¶ 13 and Exhibit S.

    [4] PFP's damage claims far exceed the awards in the file-sharing cases, where the statutory damages upheld on appeal ran between $1000 or $2000 per infringed work, even against defendants who repeatedly engaged in file-sharing knowing it was wrong. Yeh, *Statutory Damage Awards in File Sharing Cases* (Congressional Research Service 2010), available at https://sgp.fas.org/crs/misc/R41415.pdf.

the owner's sister), in response to the nagging telephone calls from paralegals from DeSouza's law firm, CopyCat Legal, both stated that she had received legal advice that CopyCat Legal was running a scam and asserted that Chicken King had a right to use all of the images on its website.  See Boudreaux Second Aff. ¶ 3; Boudreaux First Aff. ¶ 13; DeSouza Aff. ¶¶ 7-8.[5]  Even though, on the undisputed facts, PFP had no way of knowing whether Chicken King had a valid license to use the image, SMF ¶¶ 4-5, PFP filed suit and affirmatively alleged that Chicken King lacked a license. Complaint ¶ 18.  Given that PFP has no evidence showing the absence of a license, or rebutting the averments in the Gardner Declaration (DN 15-5) suggesting the use was licensed, PFP should not be heard to predicate its argument about why filing this action was reasonable on the assumption that Chicken King had no license.

Finally, PFP complains at length about several blog posts by Chicken King's counsel Mr. Levy providing a detailed legal analysis of PFP's misconduct, which PFP characterizes as an effort to advertise for clients.  See Opp.1, 12-13, 16.  To begin with, lawyers have a right to publish information that informs the public of truthful facts that might give them good reason to retain the lawyer's services, *Zauderer v. Office of Disc. Counsel*, 471 U.S. 626 (1985), especially when the lawyer works for a non-profit group addressing a public interest issue, *In re Primus*, 436 U.S. 412 (1978). In any event PFP's speculation about the reason for the blog articles is mistaken.  The material published on Public Citizen's Consumer Law and Policy Blog is intended to provide the targets of PFP's demand letters with information that they can use to protect their rights, including

---

[5] Counsel for PFP have not responded to a request from defendant for a copy of the records that Mr. DeSouza's declaration purports to describe. Levy Third Aff. ¶ 13 and Exh. S.  His description of the records, unconfirmed by the records themselves, is inadmissible under Evidence Rule 1002.

links to model letters that they can craft pro se or that their lawyers can copy in turning away unjustified demands for exorbitant damages.  Levy Third Aff ¶¶ 7-8.  Many small businesses and lawyers with no background in copyright law have been able to protect themselves and their clients using these resources.  *Id.* ¶¶ 9-10 & Exhibit R.  But the blog also expressed Mr. Levy's view that PFP has every right to enforce its copyrights and seek reasonable compensation from those who use its works without a license, so long as it does not pursue exorbitant damage claims or plainly untimely suits. *Id.* ¶ 7.  The URLs for several blog posts are listed in paragraph 8 of the Third Levy Affirmation.

At bottom, PFP's objection is that, having filed a baseless lawsuit, it must now justify, in a contested case, its contention that businesses that make a single use of one stock photo whose market value is a few dollars should pay $30,000 in damages to avoid being sued.  Although PFP points to the policy of the Copyright Act to promote the creation of creative works, the Act's policies also include the need to "deter repeated instances of . . . overaggressive assertions of copyright claims," *Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020) (quoting *Kirtsaeng*, 579 U.S. at 209 (2016)).  The Court should hold that PFP's claims were objectively unreasonable, and should award attorney fees to deter overly aggressive enforcement, as the Fifth Circuit called for "both with respect to Bell and other copyright holders who might consider a similar business model of litigation."  *Bell v. Eagle Mt. Saginaw*, 27 F.4th at 326.

**C.  The Amount of Fees Sought Is Reasonable.**

PFP objects both to the number of hours spent by Mr. Levy and to his hourly rate.  As to hours, PFP contends that preparing the motion to dismiss or for summary judgment in this case should have taken no more than 10 hours, and preparing the motion for fees should have taken no

more than 5 hours.  PFP offers no reason for choosing these numbers, and they are not supported by the filings.  Mr. Levy's hours at the merits stage of this case included drafting the 14-page memorandum, investigating the facts (including the licensing issue), drafting the affidavits, and preparing the Statement of Material Facts.  Ms. Cross's time was reasonably expended reviewing the papers and consulting regarding local practice, as required of local counsel.  The hours expended at the fee stage were also reasonable, representing work including conferring with PFP's counsel about the intended fee application, and preparing the 18-page memorandum and four declarations in support of the application.  (Defendant is not seeking fees for the additional time spent preparing this reply.)

As for the hourly rates, PFP posits that $350 is reasonable rate but not the $500 per hour requested for Mr. Levy's time.  Defendant's declaration establishes that it was unable to find affordable counsel locally.  Boudreaux Second Aff. ¶ 6.  And although PFP cites some cases, not in the context of intellectual property litigation, awarding lower rates (some recent, some less so), it does not respond either to the cases cited by Chicken King showing the award of $480 per hour in a recent copyright case or to the award of $550 per hour to Mr. Levy by a Texas court in a copyright matter litigated in 2012.  See Motion for Fees at 17.  Moreover, plaintiff's lead counsel is a South Florida lawyer who, practicing for almost twenty years, has a standard hourly rate of $450.  Under these cases, and for the other reasons set forth in Chicken King's motion, an hourly rate of $500 for Mr. Levy's time is reasonable in this case.

## CONCLUSION

The motion for an award of attorney fees should be granted.

Respectfully submitted,

_____/s Paul Alan Levy_____
Paul Alan Levy (pro hac vice)

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

_____/s/   Heather Cross_____
Heather Cross

The Cross Law Firm
6663 Jefferson Hwy
Baton Rouge, Louisiana 70806
(225) 256-0366
hcross@lawacrossla.com

June 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this date I am e-filing the foregoing Defendant's Reply Memorandum in Support of an Award of Attorney Fees and Costs and the Affirmation of Paul Alan Levy and accompanying exhibits,  which will cause those documents to be served on counsel for plaintiff John Baay.  The filings will also be emailed to Daniel DeSouza.  There are no parties not on ECF.

_____/s Paul Alan Levy_____
Paul Alan Levy (pro hac vice)

   Public Citizen Litigation Group
   1600 20th Street NW
   Washington, D.C. 20009
   (202) 588-7725
   plevy@citizen.org

June 20, 2024

-11-