UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| PREPARED FOOD PHOTOS, INC., f/k/a ADLIFE MARKETING & COMMUNICATIONS CO., INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 6:24-cv-00351-RRS-DGA |
| CLYDE'S CHICKEN KING, INC. d/b/a CHICKEN KING, | ) ) ) | |
| Defendant. | ) ) | |

### THIRD AFFIRMATION OF PAUL ALAN LEVY

1. My name is Paul Alan Levy. I am lead counsel for defendant. This affirmation is made in further support of defendant's motion for an award of attorney fees.

2. I am attaching as Exhibit Q the LinkedIn listing for Rebecca Jones. It reflects that she first came to work for AdLife Marketing and Communications Co. in 2016 as a paralegal. It does not reflect that she had any role at that company in 2005 when the photo at issue in this case was taken. Yet her declaration is made on personal knowledge.

3. I have examined defendant's website at www.chickenkingla.com. At this time, there is rotating series of photographs (in technical terms, an "image carousel") that can be seen when a visitor is at the home page of the website. A different image carousel can be seen when the visitor is at the website's products page, www.chickenkingla.com/products, and its contact page. www.chickenking la.com/contact. This latter image carousel includes the fried chicken photo at issue in this case.

4. By using the Wayback Machine on the Internet Archive, I was able to view the image carousel that was in use on defendant's website in 2016, when it first came online. At that time, the

image carousel that was seen on the home page was the same one that is now visible on the products and contact pages.  https://web.archive.org/web/20160309104430/www.chickenkingla.com/.

5.  So far as I can see, that configuration of the site continued until at least June, 2019, when plaintiff's records reflect that "Joel"—presumably Joel Albrizio, PFP's owner—first found defendant's website during reverse image searches and sent demand letters about the fried chicken photo. *E.g.*, https://web.archive.org/web/20190629204420/www.chickenkingla.com/. By September 2019, the image carousel visible on the Chicken King home page had changed to the current one. *See*  https://web.archive.org/web/20190911133731/www.chickenkingla.com/.   That change is consistent with Stacy Boudreaux's account, in paragraphs 8 and 9 of her first Affirmation, of her only partially successful effort to remove the allegedly infringing image from the Chicken King website shortly after Chicken King received the 2019 demand letter from Joel Albrizio.

6.  In the circumstances, it appears that a person doing reverse image searches in June 2019 and exercising a reasonable degree of care should have seen the fried chicken image when visiting each of the three pages of the Chicken King website.

7.  In its opposition to the motion for an award of attorney fees, plaintiff makes statements about the reasons why I have posted a number of online articles about plaintiff.  Its statements are mistaken.  The reason for the articles is to provide information to members of the public who receive plaintiff's demand letters about what the recipients' actual financial exposure is for claims of infringement, so that they can better protect their rights while also providing a fair amount of compensation to plaintiff when the targets of the demands have infringed and have no reasonable defenses.  The writing about which plaintiff complains expressly recognizes that photographers have every right to enforce legitimate copyrights against unlicensed use.  The articles include the

following:

https://clpblog.citizen.org/is-prepared-food-photos-running-a-scam-not-just-a-scheme-to-extract -excessive-rents/.

https://clpblog.citizen.org/resistance-to-extortionate-copyright-infringement-claims-by-prepared-food-photos/

https://clpblog.citizen.org/new-trolls-on-the-block-prepared-food-photos-and-daniel-desouza-copycat-legal/

https://clpblog.citizen.org/open-letter-to-copycat-legal-about-a-prepared-food-photos-infringement-claim/

https://clpblog.citizen.org/prepared-food-photos-faces-financial-repercussions-from-copyright-trolling/

8.  I talk to several of plaintiff's targets each month, often a few in each week, who have learned about the flaws in plaintiff's claims from reading the articles and who want my suggestions about how to respond.  Most of them have no idea what copyright law provides in the way of remedies and no idea about how to find a copyright lawyer whose services they can afford.  I also talk to a number of lawyers with no experience in copyright law who want advice about how they can help their clients (or a friend, or a family member) who have received demand letters.  In each situation, I explain what the law is, help the recipient assess its financial exposure, and suggest courses of action, often including the suggestion that the alleged infringer send plaintiff a check reflecting its minimum financial exposure, such as a check for $750 if plaintiff has a valid claim for statutory damages.  I never charge for this advice.  When a target does not have a lawyer and does not feel comfortable following a recommended course of action pro se, I try to recommend a lawyer whom they can afford and whose cost is significantly lower than what plaintiff insists that they should pay to plaintiff as compensation for the alleged infringement.  To the best of my knowledge,

-3-

none of the targets whom I have referred to other lawyers, or to whom I have offered information about how copyright law bears on the demand letters they received, have either been sued, or had to pay more in settlement than the figure I suggested to them. The reason is that, so far as I have been able to discern, plaintiff only sues when it thinks there will be no defense.

9.   I attach as Exhibit R an affidavit from Justin Nygard, a meat farmer in western Washington, and an email from Marshall Black, a banker in southwestern Alabama, which shows how lay owners of small businesses have been able to use the information provided in my blog posts to protect their rights.

10.   In most of the cases, my interlocutors—lay as well as lawyers— are grateful for the suggestions and find them effective. In the years since CopyCat Legal began representing plaintiff, neither of the defendants whom I have represented in litigation filed by plaintiff came to me after reading my blog articles and calling me for advice. Putting information in the hands of the victims, so that they can protect themselves, is why I publish the articles.

11. I never charge the people who call me for advice on dealing with plaintiff (just as I never charge clients whom I represent in litigation against plaintiff or other copyright enforcers).

12. I believe that plaintiff is engaged in unjustified bullying of small businesses that have made a mistake, usually a completely innocent mistake, and that are being extorted for unjustifiably high settlements which, I believe, the businesses often pay because they do not find knowledgeable counsel who charge less than a few thousand dollars. In the absence of knowledge, paying a strike settlement is their only reasonable course. It is my opinion that the only way plaintiff has been able to get away with this practice is that it avoids having to defend its contention about the damages it can collect in a contested case. By filing a motion for summary judgment in this case, and now a

motion for an award of attorney fees, Chicken King has put plaintiff in the position of having to defend the reasonableness of its damages claims and threats of damages claims.

13. I attach as Exhibit S my requests to plaintiff's counsel to provide me with the CopyCat Legal records whose contents Mr. DeSouza characterizes in his declaration, and to make their declarant Rebecca Jones available for a deposition, as well as Mr. DeSouza's response to the second request, refusing to allow a deposition. I have received no response to the request for records.

14. Plaintiff speculates in its papers about why defendant chose to file a motion for summary judgment rather than simply calling Mr. DeSouza and letting him know about the many false and misleading statements in the complaint that he drafted for Mr. Baay to file. The fact is that defendant's owner, like the owners of many of plaintiff's thousands of victims over the past few years, is outraged at plaintiff's tactics. Defendant has not planned to file suit for wrongful litigation, but it has chosen to seek an award of attorney fees. Moreover, when plaintiff faces a knowledgeable pro se adversary, or when it receives a response to its demand letter from a lawyer who shows that he or she understands the law, it chooses not to pursue that victim, even though the very next day it may send several demand letters and file suits against identically situated victims. And it is able to get away with these tactics because most small business owners have no idea how to find knowledgeable counsel, and because it costs so much for a small business to hire knowledgeable counsel (as Stacy Boudreaux indicated in paragraph 6 of her Second Affirmation) and hence plaintiff is able to avoid having to justify its claims to a neutral adjudicator in adversary litigation. The motion for an award of attorney fees places plaintiff's legal theories, its motivations, its business model, and its questionable tactics squarely in controversy for consideration in connection with the *Kirtsaeng* factors. Defendant hopes that the Court will issue an attorney fee award that compensates

its counsel for their representation, encourages other victims to stand up against bullying, and sends a strong deterrent message to plaintiff.

15.   The time records attached as Exhibit T reflect that I spent 11.2 hours through June 18 preparing this affirmation and defendant's reply brief.   Although the law would justify adding to defendant's attorney fees request, defendant asks the Court to award only the amount sought in its May 15 application.

16.   When I have written to plaintiff's counsel Messrs. Baay and DeSouza, seeking to meet and confer about this case, it has been Mr. DeSouza who addresses the substance.   It is apparent that he, and not Mr. Baay, is directing the litigation for plaintiff.   This further confirms the relevance of Mr. DeSouza's normal hourly rate, $450 per hour, in setting $500 per hour as the proper rate for my work in this case, considering that I have been practicing in the federal courts more than twice as long as Mr. DeSouza has.

Pursuant to 28 U.S.C.§ 1746, I hereby certify that the foregoing is true and correct. Executed on June 20, 2024.


_____/s/ Paul Alan Levy_____
Paul Alan Levy

# Levy Affirmation
# Exhibit Q





## Rebecca Jones · 3rd

Director of Intellectual Property at Prepared Food Photos

 Prepared Food Photos

 Harvard Business School Online

Pawtucket, Rhode Island, United States · Contact info

60 connections

Message    + Follow    More

## About

Experienced Paralegal with a demonstrated history of working in intellectual property, family law, personal injury and landlord/tenant law. Skilled in Microsoft Word, Pleadings, Legal Document Preparation, Public Speaking, and Legal Writing. Strong legal professional with a Bachelor of Science (B.S.) focused in Paralegal Studies from...

## Activity

63 followers

Rebecca Jones reposted this • 8mo

  How To Identify and Adapt Your Leadership Style
indeed.com • 6 min read

 47                                                           1 comment

Rebecca Jones posted this • 8mo

  I'm happy to share that I've completed my Other; Certificate in Management Essentials at Harvard Business School Online!

 4

Show all posts →

## Experience

  **Director Of Intellectual Property**
Prepared Food Photos · Full-time
Mar 2021 - Present · 2 yrs 10 mos
Pawtucket, RI

  **Adlife Marketing & Communications Co., Inc.**
7 yrs 3 mos

**Intellectual Property Manager**
Feb 2019 - Present · 4 yrs 11 mos
Pawtucket, RI

**Paralegal**
Oct 2016 - Present · 7 yrs 3 mos
United States



Legal secretary
Attorney Clare Jabour
Sep 2012 - Nov 2016 · 4 yrs 3 mos



Admin
DePuy Mitek
Jun 2009 - Aug 2011 · 2 yrs 3 mos

## Education



**Harvard Business School Online**
Other; Certificate in Management Essentials
Jan 2023 - Mar 2023
Grade: Complete

Management Essentials is an 8-week, 35-hour online certificate program
from Harvard Business School. Management Essentials takes a di ...see more



**Roger Williams University**
Bachelor of Science (B.S.), Paralegal Studies
2013 - 2020

Show all 3 education →

## Licenses & certifications



**Notary Public Commission**
State of Rhode Island
Issued Jan 2022 · Expires Jan 2026

## Skills

**Westlaw**

👥 4 endorsements

**Legal Research**

👥 5 endorsements

Show all 36 skills →

## Interests

Top Voices     Companies     Groups     Newsletters     Schools



Jeff Selingo 🔗 · 3rd
Bestselling author | Strategic advisor on future of learning and work |
College admissions and early career expert | Contributor, The Atlantic |
Angel investor | Editor, Next newsletter | Co-host, FutureU podcast
597,121 followers

+ Follow

Ad ···
Paul A an, make connections to boost the power of
your network

 

See the full list of Who's Viewed Your
Profile

Try now for $0

Levy Affirmation
Exhibit R

**From:** Marshall Black
**Sent:** Wednesday, June 12, 2024 10:41 AM
**To:** Public Citizen Litigation Group <pclg@citizen.org>
**Subject:** Copy Cat/PFP Shakedown in rural southwest Alabama

Paul,

I wanted to share this with you. I found your blog yesterday after a dear friend received the attached shakedown package from CopyCat Legal. My friend, Robbin Chandler, owns and operates Chandlers Grocery in Frisco City, AL, a small farming community in rural southwest Alabama. You will see his purported offense in the attachment (An employee used a photo of raw chicken gizzards, lol, for a sale ad that was posted on Facebook) Robbin's family has been in the grocery business for at least 30-40 years. He, his mother, his father and his uncle have all independently owned stores and pooled their resources as a buying group to be able to purchase foodstuffs at discounted rates. Today Robbin owns and operates the last one of those stores. (Since NAFTA passed all of the communities in our county have been shrinking). Either way I wanted to thank you for the content posted in your blog. It helped me to show Robbin that he was a victim of a scam and that he would NOT be going out of business on account of this. I forwarded your blog to an attorney friend of mine who has agreed to help. (Think Atticus Finch being paid in collard greens and hickory nuts, which, coincidentally, is an interesting thought because Monroe County, where Frisco City is located, is the home of To Kill A Mockingbird author Harper Lee and my hometown, Monroeville, is the setting of the fictional "Maycomb") I wanted to share because I believe you'd like to keep this in your file. Perhaps you will find some small change in their tactics that will aid in your continued work against these crooks. If you would like to contact me or my friend please do not hesitate to reach out. My personal cell number is

Warm regards,
mb

Marshall Black
Vice President

Monroeville, Alabama
Phone
Fax

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This e-mail message and any files transmitted with it contain confidential information intended only for the person(s) to whom this e-mail message is addressed. If you have received this e-mail message in

Paul Alan Levy (pro hac vice)
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org

Stephen Kirby
Kirby Law Office, PLLC
WSBA #43228
1312 N. Monroe Street
Spokane, WA 99201
(509) 795-4863
kirby@kirbylawoffice.com

PHILLIP R. MALONE (pro hac vice)
JUELSGAARD INTELLECTUAL PROPERTY
AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 724-1900
pmalone@stanford.edu

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

PREPARED FOOD PHOTOS, INC.,
f/k/a ADLIFE MARKETING
& COMMUNICATIONS CO., INC.,
a Florida for profit corporation,

        Plaintiff,

        v.

POOL WORLD, INC., a Washington for
profit corporation,

        Defendant.

No. 2:23-cv-00160-TOR

**AFFIRMATION OF
JUSTIN NYGARD**

1. My name is Justin Nygard. I make this affirmation about communications I have had about a threat of litigation that I received from Daniel DeSouza on behalf of Prepared Food Photos, Inc.

2. My mother Kim Nygard received the attached letter in April of this year. I called Mr. DeSouza's law firm and spoke to Fernando Baez. I offered to pay $300 in settlement of the claim. He said he would take my offer to his client.

3. When I did not hear back, I sent an email to Mr. DeSouza to ask whether my counteroffer had been accepted. I did not hear anything more until Friday, May 24, when Mr. Baez called me and offered to settle for $25,000. I respond that we both know that one picture is not worth nearly that much, and that no court would order a small business to pay that much if the case had to be fought out between lawyers. He agreed with me but pointed to the payment schedule on the Prepared Food Photos website.

4. After I told him that we both know that they have this price on their website so that they can push for large payments in the courts, he told me that he understood that I must be reading articles that Paul Levy posts online, and he admitted that their database subscription price is aimed at large businesses, not small businesses like Double D Meats.

5. I told him that I had heard that other businesses like mine had paid $750 to resolve copyright claims. He said that he had not been around for those but he thought his client would go down to $11,988.

6. I told him that my counteroffer was $750 as in the other cases. He said he did not think his client would accept that but that he would discuss it with the client.

7. On May 28, Mr. Baez called back and declined my offer. He said that I should send the demand to our insurance carrier, because this is why businesses have insurance. I said I would not do that. He dropped his demand to $20,000.

8. I will be mailing this affidavit to CopyCat Legal with our check in the amount of $750. I understand that Pool World will be providing a copy of this affidavit to CopyCat Legal at a mediation session next week.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on June 4, 2024.

_(signature)_

-2-

Case No. 2::23-cv-00160-TOR

Affirmation



CopyCat Legal PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065

T 877-HERO-CAT (877-437-6228)
E dan@copycatlegal.com

FRE 408 SETTLEMENT COMMUNICATION

April 19, 2024

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL (doubleddmeats@gmail.com)**

Double D D Meats, Inc.
Attn: Kim Nygard
5602 232nd St. SW
Suite 104
Mountlake Terrace, WA 98043

*RE:    Prepared Food Photos, Inc. v. Double D D Meats, Inc.*

Dear Ms. Nygard:

This law firm represents Prepared Food Photos, Inc. Our client is in the business of licensing high-end, professional photographs for the food industry. Through its website (www.preparedfoodphotos.com), our client offers a monthly subscription service which provides access to/license of tens of thousands of professional images. The rights associated with these images are exclusively owned by our client, and it has spent countless hours and substantial monies in building a business that relies on such exclusive subscription service. The unauthorized use of our client's work deprives it of much-needed income and forces our client to incur substantial costs (monetary and time) in identifying violators and enforcing its rights.

In 1999, our client created a photograph titled "CornedBeefDinner001" (the "Work"). A copy of the Work is exhibited below:



The Work was registered by our client with the Register of Copyrights on August 5, 2016 and was assigned Registration No. VA 2-012-581. A true and correct copy of the Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

To our knowledge, our client *did not* authorize you or your company to use and/or display the foregoing photograph(s). Notwithstanding this lack of authorization, our client has identified the subject photograph(s) appearing on the following URL:
https://www.facebook.com/photo/?fbid=805461544941737&set=pb.100064336951369.-2207520000



A true and correct copy of screenshot(s) of the website, webpage, and/or social media page, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**

If our client is mistaken or if you believe the photograph(s) was previously licensed through our client or some other party, please contact us immediately with evidence of the prior licensing. If we do not hear from you *within fourteen (14) days from the date of this letter*, we will be forced to assume that the photograph(s) was *not* properly licensed and will take appropriate legal action to enforce our client's rights.

If the above-described use of our client's photograph(s) was not properly licensed, please understand that such unauthorized use may constitute federal copyright infringement under 17 U.S.C. § 501. In such event, I encourage you to discuss the foregoing with your attorney and/or your insurance carrier as copyright infringement is a serious matter that potentially exposes you to substantial damages/attorneys' fees if we are forced to file a lawsuit on behalf of our client. Keep in mind that attorneys' fees include those you will be forced to incur to mount a defense (if any) *and* potentially the attorneys' fees/costs we will incur to pursue the matter (which may be awarded) if our client prevails in court. It is important that you are cognizant of that exposure in deciding how to respond to this letter. Assuming our client prevails in court, 17 U.S.C. § 504(c)(1) provides our client the right to recover statutory damages (for *each work* that was infringed) "in a sum of not less than $750 or more than $30,000 as the court considers just." Further, if the infringement was committed "willfully," the court may increase the award of statutory damages (for *each work* that was infringed) "to a sum of not more than $150,000."

Courts have not hesitated (where appropriate) to impose substantial statutory damages against copyright infringers of Prepared Food Photos' intellectual property. The below courts have each accepted Prepared Food Photos' minimum $11,988.00/year licensing fee as a measuring stick for actual damages and then proceeded to apply a 2x multiplier thereto in calculating statutory damages. See, e.g. Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *4 (S.D. Fla. Mar. 22, 2022) (awarding *$23,976.00* in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding *$23,976.00* in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus. Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding *$71,928.00* in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding *$71,928.00* in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-cv-07953-ER, 2023 U.S. Dist. LEXIS 68835, at *25 (S.D.N.Y. Apr. 14, 2023) (awarding *$47,952.00* in statutory damages, representing the $11,988.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

Please keep in mind both that the facts of these cases may be different than those here (thus militating in favor of a higher or lower award here) and that the above amounts do not account for attorneys' fees/taxable costs which are also recoverable under the Copyright Act. You should

consult with an attorney to review the facts of *this* case, whether you have any defenses to the claims that Prepared Food Photos may bring, and what risk you may have in ignoring this letter.

Please note that Section 504 of the Copyright Act provides for the recovery of statutory damages (as explained above) or (at our client's election) actual damages plus "any additional profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Of course, if forced to litigate this matter, we will fully explore the damages issue and make an election that is most beneficial to our client.

While this is a serious matter, it is not particularly complex. The subject photograph(s) was either properly licensed or it was not. If it was, you should notify us immediately of such licensing so that we may inform our client of such. If it was not properly licensed, then the utilization of our client's work(s) without proper authorization constitutes copyright infringement. In that case, we will either resolve this issue in court (allowing a court to decide the matter) or privately between the parties. If the subject use was not authorized, our client hereby makes the following demand:

> *You shall pay Thirty Thousand Dollars ($30,000.00) within twenty-one (21) days of the date first written above and shall immediately cease and desist from any further use of our client's work(s).*

Please contact us within the above-stated period to either provide evidence of licensing or to discuss resolution of this matter. If confirmation of a license or payment is received as described above, we will forego the filing of a lawsuit. Otherwise, please be aware that our client does not shy away from enforcing its rights in court. It has done so many times before and (as demonstrated above) secured awards commensurate with the above examples.

As stated above, the facts and circumstances of each case are different. However, you should know that "[s]tatutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." Broad. Music. Inc. v. George Moore Enters.. Inc., 184 F. Supp. 3d 166, 171-72 (W.D. Pa. Apr. 25, 2016). To further the punitive/deterrent nature of statutory damages, courts generally award plaintiffs "statutory damages of *between three and five times the cost of the licensing fees* the defendant would have paid." See Broad. Music. Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016); see also Joe Hand Promotions. Inc. v. Alburl, No. 5:18-cv-1935-LCB, 2020 U.S. Dist. LEXIS 29309, at *16-17 (N.D. Ala. Feb. 20, 2020) ("Courts have generally upheld awards of three times the amount of the proper licensing fee as an appropriate sanction to ensure that the cost of violating the copyright laws is substantially greater than the cost of complying with them."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

Using the above cases as a guide, please keep in mind that our client exclusively operates on a subscription basis. This means that access to one (1) photograph costs the same as access to the entire library of photographs. Our client makes its library available for a minimum of $999.00 per month (https://www.preparedfoodphotos.com/stock-photo-subscription/) (with the price ultimately depending on the number of 'end-users' a subscriber caters to) with a minimum subscription of twelve (12) months https://www.preparedfoodphotos.com/wp-content/uploads/PFP-Terms-of-Use-3-2023.pdf. Thus, irrespective of how long you utilized the subject photograph, the *minimum* license fee that would have been owed is $11,988.00 ($999.00 x 12 months).

You should provide a copy of this letter to your general liability insurance carrier (if one exists), notify them of our client's demand, disclose the identity of such insurer to us, and provide a copy of the subject insurance policy to us. If you believe we are mistaken as to the allegations of copyright infringement made herein, then we encourage you to provide us with copies of any license or other evidence supporting your authorized use of the subject work(s).

This letter further constitutes a demand that you immediately suspend any document destruction policy and preserve any and all documents (such as e-mails, text messages, social media pages/postings, copies of the work(s) at issue, etc.) that may be relevant to the claims or defenses in a forthcoming lawsuit. Please be aware that a federal court may impose significant sanctions if you fail to preserve relevant documents upon reasonable anticipation of litigation.

Finally, while removing the unlicensed photograph(s) from display is required, please understand that *removal alone is insufficient to end this matter*. If your use of the subject photograph is unauthorized and you do not contact us to discuss payment for your existing/past use of the photograph(s), a lawsuit *will* be filed and our client *will* pursue the above-described damages against you.

You should give this matter your immediate attention.

Very truly yours,

Daniel DeSouza, Esq.
For the Firm

Encl.

# Levy Affirmation
# Exhibit S

**Paul Levy**

| | |
|---|---|
| **From:** | Daniel DeSouza <██████████████████> |
| **Sent:** | Friday, June 14, 2024 6:24 PM |
| **To:** | Paul Levy; John Baay |
| **Cc:** | Heather Cross; Nick Sansone |
| **Subject:** | RE: Affidavit of Rebecca Jones |

I don't see how that would be relevant to whether your client is entitled to fees in this case, but in any event, we don't agree to depositions/discovery here.

- Dan

**From:** Paul Levy <plevy@████████████>
**Sent:** Friday, June 14, 2024 2:22 PM
**To:** Daniel DeSouza <██████@████████████>; John Baay <jbaay@████████████>
**Cc:** Heather Cross <██████@lawcrossing.com>; Nick Sansone <nsansone@████████████>
**Subject:** RE: Affidavit of Rebecca Jones

It's what you might expect – the generalizations about the what plaintiff's real business is, and her averments about facts dating back to long before she arrived at AdLife, in grafs 3 to 7

Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-7725
@paulalanlevy
https://www.citizen.org/article/internet-free-speech/

**From:** Daniel DeSouza <██████████████████>
**Sent:** Thursday, June 13, 2024 6:28 PM
**To:** Paul Levy <plevy@████████g>; John Baay <jbaay@████████████>
**Cc:** Heather Cross <██████████████████>; Nick Sansone <██████████████████>
**Subject:** RE: Affidavit of Rebecca Jones

My inclination is that the parties are not entitled to discovery/depositions in connection with a post-judgment motion for fees and thus would not make her available. Is there a particular area you seek to inquire about?

**From:** Paul Levy <██████████████████>
**Sent:** Thursday, June 13, 2024 6:14 PM
**To:** John Baay <██████████████████>; Daniel DeSouza <██████████████████>; Nick Sansone <ns██████████████████>
**Cc:** Heather Cross <██████████████████>
**Subject:** Affidavit of Rebecca Jones

In reviewing your opposition brief and preparing a reply, I have been reviewing the declaration of Rebecca Jones.

Although we do not plan to seek any extension of our time to file a reply brief, we are considering whether a deposition to assess her personal knowledge and the veracity of her assertions is warranted. Will you make her available for a deposition to test the assertions in her declaration while the briefing is pending before Judge Summerhays?

Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-7725
@paulalanlevy
https://www.citizen.org/article/internet-free-speech/

**Paul Levy**

| | |
|---|---|
| **From:** | Paul Levy |
| **Sent:** | Friday, June 7, 2024 1:22 PM |
| **To:** | Daniel DeSouza; j██████@███████.███ |
| **Cc:** | Heather Cross; Nick Sansone |
| **Subject:** | RE: Activity in Case 6:24-cv-00351-RRS-DJA Prepared Food Photos Inc v. Clydes Chicken King Inc Memorandum in Opposition to Motion |

I have begun to review your opposition brief, and I should like to see the documents whose contents Dan characterizes in his declaration, including the identities of the persons who made the notations in question

Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street, NW
Washington, D.C. 20009
(202) 588-7725
@paulalanlevy
https://www.citizen.org/article/internet-free-speech/

**From:** Reply@lawd.uscourts.gov <Reply@lawd.uscourts.gov>
**Sent:** Wednesday, June 5, 2024 2:28 PM
**To:** Clerk@lawd.uscourts.gov
**Subject:** Activity in Case 6:24-cv-00351-RRS-DJA Prepared Food Photos Inc v. Clydes Chicken King Inc Memorandum in Opposition to Motion

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Western District of Louisiana

### Notice of Electronic Filing

The following transaction was entered by Baay, John on 6/5/2024 at 1:28 PM CDT and filed on 6/5/2024

| | |
|---|---|
| **Case Name:** | Prepared Food Photos Inc v. Clydes Chicken King Inc |
| **Case Number:** | 6:24-cv-00351-RRS-DJA |
| **Filer:** | Prepared Food Photos Inc |

**WARNING: CASE CLOSED on 05/02/2024**

**Document Number:** 17

1

Levy Affirmation
Exhibit T

PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW • Washington DC 20009
202 588-1000 • www.citizen.org

## Time Records Report

| Staff | Date | Time | Description |
|-------|------|------|-------------|

### Prepared Food Photos v Clydes Chicken King

Levy, Paul

| | Date | Time | Description |
|---|------|------|-------------|
| | 3/27/2024 | 0.9 | Locate local counsel |
| | 3/27/2024 | 0.6 | Discuss case w/D |
| | 3/28/2024 | 0.7 | Source investigation |
| | 3/29/2024 | 1.2 | Fact and law resch for MtD |
| | 3/31/2024 | 0.7 | Resch for MtD and MSJ |
| | 4/3/2024 | 2.3 | Draft affidavits |
| | 4/4/2024 | 2.7 | Draft affidavits, SMF |
| | 4/4/2024 | 1.4 | Legal resch for MtD and SJ mem |
| | 4/5/2024 | 2.7 | Draft SJ Mem, resch; edit SMF, aff |
| | 4/7/2024 | 1.7 | Draft SJ Mem |
| | 4/8/2024 | 0.9 | Edit SJ mem, resch |
| | 4/8/2024 | 4.3 | Draft SJ Mem |
| | 4/9/2024 | 0.6 | Talk to cli, email to W about license |
| | 4/9/2024 | 3.8 | Edit SJ mem, affidavits, SMF |
| | 4/10/2024 | 0.7 | Discuss case w/W, cli |
| | 4/10/2024 | 3.9 | Edit SJ Mem and supporting papers |
| | 4/11/2024 | 4.5 | Rvw HC edits, discuss.  Finalize papers for filing |
| | 4/12/2024 | 1.4 | Cite check, rvw proofread |
| | 4/15/2024 | 0.1 | Rvw DeSouza email, consult coun, respond |
| | 4/16/2024 | 0.8 | Discuss prevailing party and Buckhannon w.MK, resch |
| | 4/16/2024 | 0.9 | Resch fees cases |
| | 4/17/2024 | 0.8 | Rates resch |
| | 4/18/2024 | 0.1 | Rvw stip, check resch, discuss coun, edit |
| | 4/19/2024 | 2.2 | Attorney fee demand letter |
| | 4/19/2024 | 0.8 | Edit fee ltr, resch |
| | 4/22/2024 | 0.2 | Finalize fee demand letter |
| | 4/24/2024 | 0.2 | Correspond re image acquisition; rvw evid |
| | 4/25/2024 | 0.1 | Finalizing stip and order |

| 5/2/2024 | 0.3 | Review proof, final edit of fee demand; note to coun re deadline |
| 5/2/2024 | 0.7 | Rvw and react to DeSouza email |
| 5/3/2024 | 0.6 | Fee settlement discussions w/AZ and DS |
| 5/3/2024 | 1.1 | Rates resch WL and CL |
| 5/9/2024 | 0.7 | Draft fee mem |
| 5/9/2024 | 2.1 | Draft fee memo, draft aff for W |
| 5/10/2024 | 0.3 | Discuss facts w SB, draft aff |
| 5/10/2024 | 4.5 | Draft Statement for fee mem |
| 5/11/2024 | 1.2 | Draft fee mem |
| 5/12/2024 | 1.3 | Draft fee mem |
| 5/13/2024 | 1.9 | Draft Levy Fee Aff, edit fee mem |
| 5/13/2024 | 4.2 | Draft fee mem |
| 5/14/2024 | 3.7 | Edit fee mem and Levy Second Aff; discuss SB aff w/SB and revise draft; discuss draft w/HC; rvw AZ edits and edit mem |
| 5/15/2024 | 2.5 | Edit fee mem, resch, proof |
| 6/5/2024 | 0.5 | Read fee opp and affs; resch |
| 6/7/2024 | 2.2 | Consult counsel, clim, experts; resch;  draft aff |
| 6/10/2024 | 1.4 | Draft  fee reply |
| 6/12/2024 | 1.8 | Draft fee reply, edit aff; talk W about Ala email |
| 6/13/2024 | 2.1 | Edit reply and aff |
| 6/14/2024 | 0.2 | Edit reply |
| 6/17/2024 | 1.9 | Edit fee reply fr NS and HC comments; write to cli |
| 6/18/2024 | 1.1 | Edit per AZ comments, resch |
| **Staff total:** | **77.5** | |
| **Case total:** | **77.5** | |
| **Grand total** | **77.5** | |